Criminal action on indictment charging defendant with the murder of one Glady Lackey.
Upon the call of the case for trial, the solicitor announced that he would not ask for a verdict of murder in the first degree, but would ask for verdict of murder in second degree or manslaughter, as the evidence justified.
The uncontroverted facts are substantially these: On 9 October, 1937, Glady Lackey, age 18 years, son of Robey Lackey and his wife, Stella Lackey, was shot and killed by a gun in the hands of defendant, aged 37 years, his first cousin. The shooting occurred on the back porch of the home of Robey Lackey, where Glady and his mother were standing, the defendant being on the ground. Robey Lackey and Glady Lackey and defendant were and at all times prior thereto had been good friends.
The State offered as an eye witness Mrs. Stella Lackey, who testified in substance that: She sent Glady to the barn for some eggs. When he returned and was in the act of delivering the eggs to her, defendant, who was standing on the ground with his single-barreled gun under his right arm, barrel pointing down, raised the gun, pointing the barrel towards Glady, and then the gun fired, the load striking Glady in his left side under the arm. She said: "He fell and I said to Head, `Run for a doctor,' and he started. That is all I can tell. My son died in about five minutes." On cross-examination she testified: "When I went out on the porch to get the eggs, immediately before the shot was fired, Head said, `Howdy.' That is all he said before the shot was fired. Immediately after the shot he said it was an accident, and when I said go for a doctor, he started off." *Page 701 
Defendant, in his own behalf, testified that he lives at Hanes, near Winston-Salem. On the morning of 9 October, 1937, he, with his wife and two children, drove to the home of his father. From there he went up on the mountain, squirrel hunting. In returning he went to the home of his uncle, Robey Lackey. As he passed the barn he saw Glady, the deceased, and walked and talked with him going to the house. On arriving at the house, "I stopped on the ground at the back porch, Glady going up on the porch. Stella Lackey, his mother, come out and I said, `Good morning.' I was carrying a single-barrel shotgun, breach loaded with a hammer, under my right arm with the barrel pointing towards the ground. . . . When I said `Good morning' I aimed to unload the gun, and I raised the barrel with my left hand to take the shell out of it, and for some unknown reason it went off . . . I had no intention of shooting Glady Lackey . . ." On cross-examination, he testified: "It, the gun, fell from my hand when it went off . . . I do not know whether the gun was cocked or not."
Verdict: Guilty of involuntary manslaughter, with a recommendation of mercy.
Judgment: Confinement in common jail of Alexander County for four months, to be assigned to work in and about the county jail. Judgment suspended upon condition that defendant pay into the office of the clerk of Superior Court for the benefit of Robey Lackey the sum of $397, to reimburse the latter for funeral and burial expenses incurred in the death of Glady Lackey, and upon the further condition that defendant pay the costs of the action to be taxed.
Defendant appealed to Supreme Court and assigns error.
The only question presented on this appeal is whether there is sufficient evidence, taken in the light most favorable to the State, as we must consider it, to take the case to the jury. In this State it is unlawful for any person to "point any gun or pistol at any person, either in fun or otherwise, whether the gun be loaded or not loaded." C. S., 4216. In keeping with uniform decision of this Court, the evidence in this respect carries the case to the jury. The defendant has had the benefit of a full and fair charge as to the law.
Defendant does not except to form of judgment.
In the trial below we find
No error. *Page 702