STATE v. EUGENE WARREN AND ODELL BROWN.

(Filed 8 October, 1947.)

**1. Larceny § 7—**

In a prosecution for larceny and receiving, evidence that a defendant, with another, was in the company of the prosecuting witness in a field where the three drank liquor, that thereafter the prosecuting witness went to sleep and that when he awoke a large sum of money which he had on his person was gone, with further evidence that defendant's shoe tracks led from the place where prosecuting witness slept and that a sum of money somewhat less than the amount the prosecuting witness had lost, but in the same denominations, was found in defendant's house and that a paper which had been in the prosecuting witness' billfold was found on his premises, *is held* sufficient to overrule defendant's motion to nonsuit.

**2. Same—**

In a prosecution for larceny and receiving, evidence tending only to show that a defendant was in the company of the prosecuting witness on the night prior to the time the money was stolen, and that after defendant had been jailed he was told that all he would have to do to get out of trouble would be to give the prosecuting witness so much money, to which defendant replied "go get my daddy and B," the prosecuting witness, *is held* insufficient to be submitted to the jury.

**3. Criminal Law § 31e—**

Testimony that when arrested defendant had shoes worn so as to make a peculiar mark on the ground and that these shoes fitted the tracks at the scene of the crime, is competent.

**4. Criminal Law § 53e—**

In the absence of a request, it is not error for the court to fail to define circumstantial evidence and to instruct the jury how to evaluate such evidence, the general charge as to the burden and *quantum* of proof required being without error.

**5. Same: Criminal Law § 52a—**

The intensity of proof required of the State, whether relying on circumstantial or direct evidence, is to prove defendant's guilt to a moral certainty or beyond a reasonable doubt, but when aptly requested to do so, the court must charge that circumstantial evidence must produce in the minds of the jurors a moral certainty of defendant's guilt and exclude every other reasonable hypothesis.

APPEAL by defendants from *Clement, J.,* at August Term, 1947, of WILKES.

Criminal prosecution tried upon indictment charging larceny and receiving from the person.

The State offered evidence tending to show that on the evening of 15 July, 1946, Roby Broyhill had $1,700.00, twenty $50.00 bills, one $100.00 bill, and thirty $20.00 bills, and a paper with some figures on it, in a billfold in his pocket. He had been hauling beans to some point in Tennessee and got home at 6:00 or 7:00 p.m. Later he went to a store near the Town of North Wilkesboro. He left this store around 11:00 o'clock. He then went to Clarence Benton's place. The defendants and others were there. About an hour and a half later Broyhill started home. He was overtaken by these defendants. Broyhill and the defendants left the highway a distance of about 125 feet and all three of them took a drink of liquor. They sat down and talked. Later they walked into a cornfield some 500 feet from the highway where they sat down and all three of them took another drink. Broyhill went to sleep. Next morning he discovered his money was gone. Brown's shoe tracks were identified, leading from the place where Broyhill slept. Tracks made by three or four different persons were also identified. Later $450.00 were found in a cap hanging on the wall in Brown's home. The money consisted of seven $50.00 bills and five $20.00 bills. The paper that Broyhill had in his billfold on the night of 15 July, 1946, was also found near Brown's spring. The money and paper were introduced in evidence.

The only evidence against the defendant Warren, other than his presence with Broyhill on the night of 15 July, 1946, is a conversation between the witness Sprinkle and Warren following his arrest and incarceration. Sprinkle testified that at the suggestion of Broyhill he went to the jail and had the following conversation with Warren: "I told him Broyhill said if he would find his money he would take up the papers. Warren said: 'Will you get him to take up the papers if I get the money?' I said, 'If you have got the money get it and you can get out of this trouble.' He said 'Get get my Daddy and Broyhill.'" On cross-examination Sprinkle testified that Broyhill named four different people who might have his money. That he said he had taken his purse out in Benton's place. "It was all Broyhill's idea for me to go in the jail and

talk to Warren. He wanted me to go and see if I could get his money back. The way I told him was if he wanted to get out of the trouble. If he would give him so much money, he would take up the warrant."

Verdict: Each defendant guilty as charged in the bill of indictment. From the judgment imposed, the defendants appeal, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Trivette, Holshouser & Mitchell for defendants.*

DENNY, J. The first assignment of error to be considered is based on the exception to the refusal of his Honor to sustain the defendants' motion for judgment as of nonsuit. The ruling of the court below in this respect as to the defendant Brown, will be upheld. However, we do not think the evidence as disclosed by the record is sufficient to sustain a verdict of guilty as to the defendant Warren.

There is no evidence tending to establish the guilt of the defendant Warren other than his presence with Broyhill and Brown on the night of 15 July, 1946, unless the conversation which took place in the jail between the witness Sprinkle and Warren may be interpreted as a confession of guilt. We do not think this conversation should be so construed. This view is supported by Sprinkle's testimony on cross-examination. Sprinkle informed Warren that all he would have to do to get out of trouble would be to give Broyhill so much money. It cannot be fairly inferred as a confession of guilt when such a proposal was made for him to reply "Go get my Daddy and Broyhill." The motion for judgment as of nonsuit should have been allowed as to the defendant Warren.

The defendant Brown assigns as error the admission of evidence tending to show that one of the shoes worn by him when he was arrested had a sole worn down to the canvass, that the shoe made a peculiar mark on the ground, and that this shoe fit perfectly into tracks found in the cornfield where Broyhill slept on the night of 15 July, 1946. This evidence was competent and the assignment of error cannot be sustained. *S. v. Walker,* 226 N. C., 458, 38 S. E. (2d), 531; *S. v. Mays,* 225 N. C., 486, 35 S. E. (2d), 494; *S. v. McLeod,* 198 N. C., 649, 152 S. E., 895.

This defendant also assigns as error the failure of the trial Judge to define circumstantial evidence and to instruct the jury how to appraise or evaluate such testimony. In the absence of a request to do so, the failure of the court to instruct the jury regarding circumstantial evidence, or as to what such evidence should show, will not be held for reversible error, if the charge is correct in all other respects as to the burden and measure of proof. *S. v. Shook,* 224 N. C., 728, 32 S. E. (2d), 392. However, when the trial Judge does charge the jury regarding

circumstantial evidence no set formula is required, but an instruction substantially as given in *S. v. Stiwinter,* 211 N. C., 278, 189 S. E., 868, and approved in *S. v. Miller,* 220 N. C., 660, 18 S. E. (2d), 143, is required. There the Court said: "When the State relies upon circumstantial evidence for a conviction, the circumstances and evidence must be such as to produce in the mind of the jurors a moral certainty of the defendant's guilt, and exclude any other reasonable hypothesis. . . . See, also, *S.'v. Madden,* 212 N. C., 56, 192 S. E., 859, where *Barnhill, J.,* fully·discusses the subject. See, also, 23 C. J., 149, 150, 153."

It makes no difference whether the State is relying on circumstantial or direct evidence, or both, the evidence must produce in the mind of the jurors a moral certainty of the defendant's guilt, otherwise the State has not proven his guilt beyond a. reasonable doubt.

The charge of his Honor in the trial below is free from prejudicial error.

We have examined the other assignments of error and they are without merit.

We find no error in the trial below as. to the defendant Odell Brown. The judgment as to Eugene Warren is reversed.

On Brown's appeal—No error.

On Warren's appeal—Reversed.