## STATE v. TILLMAN LAVON HONEYCUTT.

(Filed 29 April, 1959.)

**1. Homicide § 6—**

Involuntary manslaughter is the unintentional killing of a human being resulting from the performance of an unlawful act not amounting to a felony or not naturally dangerous to human life, or from the performance of a lawful act in a culpably negligent way, or from the culpably negligent omission to perform a legal duty.

**2. Homicide § 20—**

Evidence tending to show that defendant, after inspecting his gun to see if it needed cleaning, reloaded it and aimed it at a tree, and then turned to his left to go toward the front steps, when the gun hit a porch post and discharged, fatally wounding deceased, who was standing on the porch, with no evidence that defendant intentionally pointed the gun at any person and with evidence negating malice, *is held* insufficient to be submitted to the jury in a prosecution for involuntary manslaughter.

APPEAL by defendant from *Johnston, J.*, 8 September Term 1958 of ROWAN.

This defendant was tried upon a bill of indictment charging him with unlawfully and feloniously slaying one Betty Jean Harkey on 5 July 1958.

The evidence discloses that the defendant, a 17-year-old boy, was at home on leave from the Army; that he had been in the service for about six weeks. On Friday, 4 July 1958, Betty Jean Harkey, whom the defendant planned to marry, went to the Honeycutt home and remained there overnight. She had spent practically every weekend with the Honeycutts after the defendant entered the Army. The defendant's father and mother were present in the home on the occasion involved herein.

After the noon meal was finished on 5 July 1958, Betty Jean Harkey went back to the kitchen to help wash the dishes. The defendant's mother told her to go and be with Lavon because they were going to take him back to camp soon. The defendant went to his bedroom, following the noon meal, and picked up his shotgun to see if it needed cleaning, and since the light was bad in the room he carried the gun out to the front porch and was looking at it for rust spots. He checked the gun and ejected a shell. He then picked up the shell and reloaded the gun. Meanwhile, Betty Jean Harkey and the defendant's 9-year-old sister walked out on the porch and were standing near the steps. After looking for a bird and aiming at a pear in a pear tree from the edge of the porch, the defendant " went to lower the gun," turned to his left to go to the steps and hit a porch post with the end of the gun barrel. The gun discharged and Betty Jean Harkey was fatally wounded. The defendant and his mother and father took Betty Jean to the hospital, but she was dead on arrival.

While there is some variance in the statements made to the officers by the defendant to the effect that he did not know the gun was loaded, and that he turned because he heard a noise and as he turned he hit the porch post, the officers testified that when he made these statements it was immediately after the girl's death; that he was upset and later told them just what he testified to on the trial.

All of the testimony tends to show that the deceased and the members of the Honeycutt family were on the best of terms. The officers testified that the defendant was not drinking. The defendant offered evidence of his good character and reputation. Evidence was also offered to the effect that the defendant had never been convicted of any offense, and that he and Betty Jean Harkey were in love and had planned to be married.

The jury returned a verdict of involuntary manslaughter, and from the judgment imposed the defendant appeals, assigning error.

*Attorney General Seawell, Assistant Attorney General McGalliard, for the State.*

*Robert M. Davis, George R. Uzzell for the defendant.*

DENNY, J. The defendant's sole assignment of error is to the refusal of the court below to sustain his motion for judgment as of nonsuit at the close of all the evidence.

There is no evidence on this record that tends to show the defendant intentionally pointed the gun in the direction of the deceased, as was the case in *S. v. Head*, 214 N.C. 700, 200 S.E. 415.

In the case of *S. v. Satterfield*, 198 N.C. 682, 153 S.E. 155, in speaking of involuntary manslaughter, this Court said: "This offense consists in the unintentional killing of one person by another without malice (1) by doing some unlawful act not amounting to a felony or naturally dangerous to human life; or (2) by negligently doing some act which in itself is lawful; or (3) by negligently failing or omitting to perform a duty imposed by law. These elements are embraced in the offense as defined at common law. Wharton, Homicide, 7; 1 Crim. Law (11 ed.), 622; 1 McClain on Crim. Law, 303, sec. 335; Clark's Crim. Law, 204. The definition includes unintentional homicide resulting from the performance of an unlawful act, from the performance of a lawful act done in a culpably negligent way, and from the negligent omission to perform a legal duty."

In our opinion, the evidence adduced in the trial below tends to show an accidental shooting; there is no evidence that the gun was intentionally discharged or that it was handled so recklessly as to constitute culpable negligence. *S. v. Cope*, 204 N.C. 28, 167 S.E. 456; *S. v. Watts*, 224 N.C. 771, 32 S.E. 2d 348; *S. v. Robinson*, 229 N.C. 647, 50 S.E. 2d 740; *S. v. Tolbert*, 240 N.C. 445, 82 S.E. 2d 201; *S. v. Becker*, 241 N.C. 321, 85 S.E. 2d 327; *S. v. Hancock*, 248 N.C. 432, 103 S.E. 2d 491.

The defendant is entitled to his discharge, and to that end the judgment below is

Reversed.