STATE v. WILLIAM RONALD HAMILTON.
— AND —
STATE v. BOBBY BEASLEY.

(Filed 20 March 1968.)

**1. Criminal Law § 106—**

An extra-judicial confession is insufficient to support a criminal conviction without independent proof of the *corpus delicti.*

**2. Homicide § 1—**

The *corpus delicti* in a criminal homicide consists of the fact of death and the existence of a criminal agency as its cause.

**3. Criminal Law § 106—**

In ruling upon the State's evidence *aliunde* the confession, the evidence must be considered in the light most favorable to the State, giving it the benefit of every reasonable inference fairly deducible therefrom.

**4. Homicide § 21—**

To make a *prima facie* showing of a homicide *corpus delicti,* the State need not eliminate all inferences tending to show a noncriminal cause of death, but must introduce evidence sufficient to create a reasonable inference that the death could have been caused by a criminal agency.

**5. Criminal Law § 106—**

A confession may be corroborated by circumstantial evidence, and to support a conviction the corroborative evidence need not be sufficient, independent of the confession, to establish the commission of the crime.

**6. Same—**

If there is any evidence tending to prove the fact of guilt or which reasonably conduces to this conclusion as a fairly logical deduction and not merely such as raises a suspicion or conjecture of guilt, the case should be submitted to the jury.

**7. Homicide § 21—**

Evidence of the State tending to show that the deceased's nude body was discovered in a creek, that bruises were found on the body, that the cause of death was drowning, and that deceased was seen riding in an automobile with defendants on the night of his disappearance makes a *prima facie* showing of a homicide *corpus delicti,* and such evidence, together with defendants' confessions that after one of them had beaten the deceased, they together undressed the deceased and threw him into the creek, *is held* sufficient to sustain defendants' convictions of voluntary manslaughter.

**8. Homicide § 6—**

Involuntary manslaughter is the unintentional killing of a human being resulting from the performance of an unlawful act not amounting to a felony or not naturally dangerous to human life, or from the performance of a lawful act in a culpably negligent way, or from the culpably negligent omission to perform a legal duty.

**9. Homicide § 26—**

In this homicide prosecution the failure to charge the jury with reference to involuntary manslaughter was not error, since there was no evidence to support such instruction.

THESE two cases were tried together before *Braswell, J.,* December 1967 Criminal Session, JOHNSTON County Superior Court. Two separate records were filed in this Court and each case was docketed as a separate appeal but will be considered and treated as one case, the same as in the trial court.

Each of the defendants was tried under an indictment charging first degree murder. At the time of the trial the solicitor on behalf of the State put each defendant on trial for the crime of murder in the second degree, or manslaughter, as the facts might reveal. Each defendant entered a plea of not guilty and from a verdict of guilty of manslaughter and the imposition of sentence thereon, each defendant took an appeal. The defendant Beasley was sentenced to nine years imprisonment and the defendant Hamilton to ten years.

*Attorney General Bruton and Assistant Attorney General Millard R. Rich, Jr., for the State.*

*Tyson Y. Dobson, Jr., for defendant William Ronald Hamilton.*

*C. C. Canaday, Jr., for defendant Bobby Beasley.*

CAMPBELL, J. Each defendant makes the same assignments of error. The facts sufficiently appear in the opinion.

Neither defendant offered any evidence and each contends that the case should have been dismissed at the close of the State's evidence.

Each defendant concedes that a voluntary confession was made by each under such circumstances that none of the constitutional rights of either was violated. Each defendant, however, contends that it was error to admit the confession since the State failed to prove the commission of any crime *aliunde* the confession and that such failure on the part of the State necessitated the dismissal of the criminal charges, and that a judgment of nonsuit should have been entered.

North Carolina follows the rule succinctly applied in *State v. Bass,* 253 N.C. 318, 116 S.E. 2d 772 (1960), that an extra judicial confession, standing alone, cannot be used to prove the commission of a crime. There must be independent proof of the *corpus delicti.* *State v. Crawford,* 260 N.C. 548, 133 S.E. 2d 232 (1963).

"The *corpus delicti* in criminal homicide involves two elements: (1) The fact of the death. (2) The existence of the criminal agency

of another as the cause of death." 41 C.J.S., Homicide, section 312. Citing *State v. Johnson*, 193 N.C. 701, 138 S.E. 19 (1927).

In order to determine whether there was evidence on behalf of the State, *aliunde* the confessions of the defendants, the evidence must be considered in the light most favorable to the State and we must give to such evidence the benefit of every reasonable inference fairly deducible therefrom. Strong, 2 N. C. Index, 2d Ed., Criminal Law, Section 106. Citing cases.

The State offered evidence to the effect that the nude body of MacDaniel McCoy (a Negro man) was found September 1, 1967, in Middle Creek in Johnston County about 500 yards from a bridge across said creek. The body at the time was caught on a snag in a curve near the bank of the creek and the water in the creek was running swiftly. On the side of the road some 85 to 90 feet from the bridge across the creek, there was found a metal button with the words, "Payday" on it and attached to it was a pink thread. It was shown that this button came from the overalls that the deceased had been wearing on Friday, August 25, 1967, which was the last day the deceased had been seen alive by his relatives. Witnesses testified to seeing the deceased riding in the automobile with the defendant Hamilton about midnight Friday, August 25, 1967.

About 1:30 or 2:00 a.m., in the morning of August 26, 1967, James Johnson, the operator of a service station, testified to seeing both defendants and a colored man whom he did not know at his service station where they bought gas and cigars. At that time the defendant Hamilton told the witness Johnson that he was going to whip the Negro but did not say when he was going to do it.

On September 5, 1967, each of the defendants was picked up by the officers and at that time a belt belonging to the deceased was found in the back of the defendant Hamilton's automobile.

The deceased was around 49 or 50 years old, weighed about 130 to 135 pounds and was five feet four inches in height. He was last seen by members of his family about midnight Friday, August 25, 1967.

At the time his body was found floating in Middle Creek on September 1, 1967, considerable putrefaction had taken place.

An autopsy was performed and the pathologist testified that he found areas of bruising on the body but no fractured bones. The pathologist testified that in his opinion the deceased came to his death from drowning and acute alcoholism, but that in his opinion there was not sufficient alcohol of itself to cause death.

We think the evidence introduced by the State *aliunde* the confessions of each defendant was sufficient to make out a *prima facie*

showing of *corpus delicti*. "To meet the foundational test the prose-· cution need not eliminate all inferences tending to show a non-criminal cause of death. Rather, a foundation may be laid by the introduction of evidence which creates a reasonable inference that the death could have been caused by a criminal agency * * * even in the presence of an equally plausible non-criminal explanation of the event." *People v. Jacobson*, 46 Cal. Rptr. 515, 405 P. 2d 555· (1965). See also the cases of *Kozlowski v. State*, 248 Ala. 304, 27 So. 2d 818 (1946) and *State v. Thomas*, 222 S.C. 484, 73 S.E. 2d 722 (1952).

As stated by Britt, J. of this Court in the case·of *State of North Carolina v. William Francis Burgess* filed this day: "The corrobora-tion of the confession necessary to support its introduction into evi-· dence can be shown by circumstances. * * * A confession will be sufficient if there be such extrinsic corroborative circumstances, as will, when taken in connection with the confession, establish the prisoner's guilt in the minds of the jury beyond a reasonable doubt. * * * The rule does not require that the independent evidence of *corpus delicti* shall be so full and complete as to establish unaided the commission of a crime. It is sufficient if the extrinsic circum-stances, taken in connection with the defendant's admission, satis-fies the jury of the defendant's guilt beyond a reasonable doubt."

Having held that the inculpatory statements were properly ad-· mitted, what do they indicate?

Each defendant freely and voluntarily made a statement to Robert D. Emerson, a special agent with the North Carolina State Bureau of Investigation. These statements were to the effect that on Friday night, August 25, 1967, the two defendants and the deceased, MacDaniel McCoy rode around Johnston County in the Ford auto-mobile of the defendant Hamilton. The three were drinking white liquor. Hamilton stated that he was doing the driving and that Beas-ley and the deceased had an argument and that Beasley struck the deceased several blows and wanted to throw him over the bridge railing; that he, Hamilton, assisted Beasley in undressing the de-ceased and helped to throw the deceased over the railing.

Beasley, on the other hand, stated that he was asked to drive and did drive and that Hamilton claimed the deceased owed him some money and threatened to kill the deceased if he did not pay. They argued over the money and Hamilton began to hit the deceased· and the deceased got quiet and Hamilton said: "Let's throw him in the creek." Beasley further stated that he stopped the car and the deceased was dead or knocked out and that Hamilton had undressed

him and that he helped Hamilton throw the deceased over the rail into the water and that the deceased was unconscious.

Both defendants said this occurred about 2:00 a.m. August 26, 1967, and that later they went back to the place and did not see the deceased.

We are of the opinion and so hold that there was sufficient evidence of the guilt of each of the defendants to require the case be submitted to the jury. "If there is any evidence tending to prove the fact of guilt or which reasonably conduces to this conclusion as a fairly logical and legitimate deduction, and not such as merely raises a suspicion or conjecture of guilt, it is for the jury to say whether they are convinced beyond a reasonable doubt of the fact of guilt." Strong, 2 N. C. Index 2d, Criminal Law, Section 106, and cases cited therein.

Each defendant contends that the trial court committed error in the charge in failing to include the crime of involuntary manslaughter as one of the possible verdicts.

In the case of State v. Satterfield, 198 N.C. 682, 684, 153 S.E. 155 (1930), Adams, J. said: "This offense (involuntary manslaughter) consists in the unintentional killing of one person by another without malice (1) by doing some unlawful act not amounting to a felony or *naturally dangerous to human life;* or (2) by negligently doing some act which in itself is lawful; or (3) by negligently failing or omitting to perform a duty imposed by law. These elements are embraced in the offense as defined at common law. Wharton, Homicide, 7; 1 Crim. Law (11 Ed.) 622; 1 McClain on Crim. Law, 303, sec. 335; Clark's Crim. Law 204. The definition includes unintentional homicide resulting from the performance of an unlawful act, from the performance of a lawful act done in a culpably negligent way, and from the negligent omission to perform a legal duty." (emphasis added.)

This definition is quoted with approval in State v. Honeycutt, 250 N.C. 229, 108 S.E. 2d 485 (1959).

The acts of the defendants, in the instant case, were without the scope of involuntary manslaughter and, therefore, there was no necessity for the court to include this as a possible verdict.

The cases cited by the defendants are readily distinguishable and the instant case is not unlike the factual situation presented in State v. Rich, 231 N.C. 696, 58 S.E. 2d 717 (1950) where Winborne, J. (later C.J.) stated:

"III. 'Did the court err in its charge to the jury in not submitting that there might be a finding of guilty of involuntary manslaughter?' As to this contention, the court instructed the jury that

one of three verdicts might be returned, guilty of murder in the second degree, guilty of manslaughter, or not guilty. In the light of the evidence offered by the State it does not appear that the failure of the trial judge to charge on involuntary manslaughter was error."

In the instant case the trial judge, after a fair and accurate exposition of the law and application thereof to the facts in the case, submitted the same three possible verdicts as to each defendant.

Hence, after careful consideration of all questions presented, we find in the judgment below

No error.

MORRIS and PARKER, JJ., concur.