STATE OF NORTH CAROLINA v. ELDON BOBBY LEWIS

No. 39

(Filed 16 June 1972)

1. Larceny § 5— possession of recently stolen property

To give rise to the presumption that one found in the unexplained possession of recently stolen property is the thief, it is not necessary that the stolen property be found actually in the hands of or on the person of the accused, it being sufficient if it was found in a container or place of deposit under his exclusive personal control.

2. Burglary and Unlawful Breakings § 5; Larceny § 5— possession of recently stolen property — breaking and entering — presumptions

When it is established that a store or warehouse has been broken into and entered and that merchandise has been stolen therefrom, the discovery of the stolen articles in the possession of defendant soon

State v. Lewis

after the theft raises a presumption that he is guilty both of the breaking and entering and of the larceny.

**3. Larceny § 7— possession of recently stolen property — tools in car trunk**

The evidence was sufficient to support a finding that stolen tools found in a tool box in the trunk of a car in which defendant was sitting in the back seat were in the possession of defendant, where a police officer testified that the car was defendant's car, defendant's wife testified on cross-examination that defendant kept his tool box in the trunk of the car and that he was the individual who "had the key for the car," an officer testified that the defendant gave permission for the opening of the trunk of the car and actually opened it, and defendant's wife testified that the driver was defendant's friend.

**4. Trial § 15— waiver of objection**

An objection to evidence not taken in apt time is waived.

**5. Criminal Law § 169— erroneous admission of evidence — admission of similar testimony without objection**

Admission of testimony by a police officer that a representative of a builders supply company came to the city in which defendant was arrested and identified tools found in the trunk of defendant's car, and that the tools were thereupon delivered to the sheriff of the county in which the builders supply company was located, if error, was rendered harmless when the tools in question were thereafter identified by an employee of the builders supply company as having come from its stock of merchandise.

**6. Criminal Law § 60— footprints — non-expert testimony — harmless error — expert testimony**

The trial court did not err in permitting a non-expert witness, a policeman, to testify that he compared defendant's shoes with a shoe print on a ledger found near a rifled safe and that "it was the shoes I was looking for to the best of my knowledge;" even if the admission of such testimony constituted error, it would be harmless in view of the competent opinion testimony of an expert in the identification of footprints that defendant's left shoe made the print on the ledger.

APPEAL by defendant from *Bailey, J.*, at the 4 October 1971 Criminal Session of CUMBERLAND.

By indictment, proper in form, the defendant was charged with felonious breaking and entering, felonious larceny after breaking and entering, and safecracking. He was found guilty of each of the offenses so charged and was sentenced to imprisonment for 10 years upon each of the first two charges, these sentences to run consecutively, and to imprisonment for

life upon the charge of safecracking, this sentence to run concurrently with the other two.

The evidence on behalf of the State was to the following effect:

The place of business of Builders Wholesale Supply of Fayetteville, Inc., was closed and its employees left at noon on Saturday, 30 January 1971. At that time a ledger of the company was put in its safe in the office and the safe was locked.

At approximately 11 a.m. on Sunday, 31 January 1971, employees of the company and Deputy Sheriff Martin went to the company's place of business. They found that a corner of the building, constructed at that point of corrugated metal, had been ripped open sufficiently to permit a person to enter. The large safe had been overturned and forced open by the use of chisels and a sledge hammer. On the floor of the office lay the ledger. On the outside cover of the ledger was the print of a shoe with semicircular ridges or lines across the sole. Approximately $1,500 in money and a large number of tools, including screwdrivers, chisels, and a sledge hammer were missing.

Shortly after midnight of 31 January 1971, Harold Priest, a police officer in Elizabethtown, observed the defendant and another man in a 1960 Ford automobile, the defendant being in the back seat, the other man driving. The defendant opened the trunk of the car and permitted Officer Priest to examine it. In the trunk were approximately 50 tools, including a large sledge hammer, hand saws, crow bars, screwdrivers, tin snips, and cold chisels, together with a metal tool box. An unusually large cold chisel, a sledge hammer, a crow bar and a nail puller so found in the trunk of the automobile were identified in court by an employee of Builders Wholesale Supply as having been part of its stock of merchandise. The identifications were made by inventory and cost marks placed on the items by the witness and, in the case of the chisel, by his personal recollection of having attempted, unsuccessfully, to sell it to a customer on the day prior to the break-in. Other tools so found in the trunk of the automobile were of the same brands as those sold by Builders Wholesale Supply and were new but bore no identifying marks.

The ledger had no footprint on its cover when it was locked in the company's safe at closing time prior to the break-

in. The shoes worn by the defendant at the time of his arrest in Elizabethtown bore the same type of ridges on the sole as those observed in the shoe print on the cover of the ledger. In the opinion of an expert witness in the realm of footprint identification, based upon these markings and upon others made by scratches and cuts, the print on the ledger cover was made by the left shoe worn by the defendant at the time of his arrest. The ledger, the shoes and the above mentioned tools were introduced in evidence.

The defendant was not an employee of Builders Wholesale Supply and was not its regular customer.

The evidence for the defendant, who did not testify, tended to establish an alibi, being to the effect that he was in the company of his wife from noon until shortly after midnight on Saturday, 30 January 1971, and immediately thereafter entered into an all-night poker game, which he did not leave until after the break-in was discovered. Upon cross-examination, the defendant's wife testified that he customarily kept his tool box and work shoes in the trunk of his car and he was the individual who had the key for the car.

*Attorney General Morgan and Associate Attorney Ricks for the State.*

*Sol G. Cherry, Public Defender, and James R. Nance, of Counsel, for defendant appellant.*

LAKE, Justice.

[1, 2] "It is the general rule in this State that one found in the unexplained possession of recently stolen property is presumed to be the thief. This is a factual presumption and is strong or weak depending on circumstances—the time between the theft and the possession, the type of property involved, and its legitimate availability in the community." *State v. Raynes,* 272 N.C. 488, 158 S.E. 2d 351; *State v. Allison,* 265 N.C. 512, 144 S.E. 2d 578; Strong, N. C. Index, 2d, Larceny, § 5. To give rise to this presumption, it is not necessary that the stolen property be found actually in the hands of or on the person of the accused, it being sufficient if it was found in a container or place of deposit under his exclusive personal control. *State v. Foster,* 268 N.C. 480, 487, 151 S.E. 2d 62. When it is established that a store or warehouse has been broken into and

entered and that merchandise has been stolen therefrom, the discovery, soon after such theft of articles, so stolen, in the possession of the defendant raises a presumption that he is guilty both of the breaking and entering and of the larceny. *State v. Allison, supra.*

[3] The court so instructed the jury in the present case. The defendant assigns this as error. He contends that there was no sufficient evidence that the tools, identified as having been stolen from the place of business of Builders Wholesale Supply and as having been found in the tool box in the trunk of the car in which the defendant was sitting, were in the possession of the defendant. There is no merit in this contention. While the defendant was not the driver, Officer Priest testified, without objection, that the car was "Mr. Lewis' car." He further testified that the tools, identified by the employee of Builders Wholesale Supply as having been stolen from its place of business, were found by him in the tool box in the trunk of the car. On cross-examination, the defendant's wife testified that the defendant kept his tool box in the trunk of the car and that he was the individual who "had the key for the car." Officer Priest testified that the defendant gave permission for the opening of the trunk of the car and actually opened it, whereupon the tools and tool box were observed by the officer. The defendant's wife testified that the driver was the defendant's friend. The evidence is ample to support a finding that the tools were in the possession of the defendant when discovered by Officer Priest. His unexplained possession of the stolen merchandise raised the presumption that the defendant was guilty both of the breaking and entering and of the larceny of the tools.

The defendant does not contend that the presence of the tools in the trunk of the car was discovered in the course of an unlawful search. The testimony of Officer Priest that the defendant not only consented to the search but actually opened the trunk, himself, is uncontradicted. The record does not disclose that the defendant was under arrest at the time.

[4, 5] The defendant contends that the court erred in failing to strike the testimony of Officer Priest to the effect that a representative of Builders Wholesale Supply came to Elizabethtown and identified the tools in question and that, thereupon, Officer Priest delivered the tools to Sergeant Frye of the Cum-

berland County Sheriff's Department. He contends that this was incompetent as hearsay. There was no objection to the question which elicited this testimony. To some extent, the answer was not responsive to the question but there was no motion to strike until after a further question was propounded to the witness. The court overruled the motion to strike, saying, "It comes too late." In this there was no error. An objection to evidence not taken in apt time is waived. *State v. Hunt,* 223 N.C. 173, 25 S.E. 2d 598; Strong, N. C. Index, 2d, Trial, § 15; Stansbury, North Carolina Evidence, 2d Ed, § 27. Furthermore, had there been error in this ruling it would have been harmless since, thereafter, without objection, the tools in question were positively identified by Witness Hardison, an employee of Builders Wholesale Supply, as having come from its stock of merchandise.

[6] Detective Sergeant Frye, an employee of the Cumberland County Sheriff's Department, testified, without objection, that following the defendant's arrest by Officer Priest, he observed the shoes worn by the defendant and could see that they were the same kind of shoes he was looking for in relation to the shoe print which he had observed on the ledger found near the rifled safe. He testified that he then asked the defendant for his shoes and the defendant gave them to him. The shoes so received from the defendant, having been identified by Sergeant Frye, and the ledger were admitted in evidence as exhibits of the State. Sergeant Frye then testified that he made a "visual comparison" between the shoes and the shoe print on the ledger. He was then asked, "What were your observations concerning [the ledger] and any comparison you made between the three items [the ledger and the shoes]?" Over objection, the witness testified, "From the best I can tell, it was the shoes I was looking for to the best of my knowledge." There was no error in the admission of this testimony. *State v. Warren,* 228 N.C. 22, 44 S.E. 2d 207. Had there been error, Sergeant Frye not being qualified as an expert in the identification of footprints, it would be harmless in view of the subsequent detailed testimony by Special Agent Jones of the State Bureau of Investigation, a qualified expert in that field. Mr. Jones testified in detail as to identifying marks upon the defendant's left shoe, in relation to the print on the ledger, and stated his opinion to the effect that this shoe made the print. His testimony was clearly competent under the test laid down in *State*

*v. Palmer,* 230 N.C. 205, 52 S.E. 2d 908, and applied in *State v. Pinyatello,* 272 N.C. 312, 158 S.E. 2d 596, the latter case having a striking similarity to the present one.

Obviously, there was ample evidence to require the submission to the jury of the question of the defendant's guilt on each of the charges. There was no error in the denial of his motions for judgment of nonsuit.

We have considered each of the other assignments of error by the defendant and find no merit therein. No useful purpose would be served by a detailed discussion of any of them.

The defendant does not assign as error the imposition of the sentence of life imprisonment on the charge of safecracking. We nevertheless observe that G.S. 14-89.1 provides that the punishment for this offense is "a sentence, in the discretion of the trial judge, of from ten years to life imprisonment in the State penitentiary." There was, therefore, no error of law in the imposition of the sentence to life imprisonment. The sentence having been lawfully imposed in the discretion of the trial judge, this Court has no authority to modify it. The trial judge in this, as in other criminal cases, has the opportunity to observe the defendant and to consider his former record of criminal convictions, if any, which the appellate court, being limited to the printed record before it, does not have. If the sentence imposed is unduly severe, the proper authorities from which to seek relief on that count is the Board of Paroles.

No error.