State v. Holshouser

Judges MORRIS and HEDRICK concur.

---

STATE OF NORTH CAROLINA v. BOBBY LEE HOLSHOUSER

No. 7219SC508

(Filed 2 August 1972)

1. Homicide § 6— involuntary manslaughter — elements

Involuntary manslaughter is the unlawful killing of a human being, unintentionally and without malice, proximately resulting from the commission of an unlawful act not amounting to a felony, or resulting from some act done in an unlawful or culpably negligent manner, when fatal consequences were not improbable under all the facts existent at the time, or resulting from the culpably negligent omission to perform a legal duty.

2. Homicide § 21— accidental shooting — involuntary manslaughter — sufficiency of evidence to withstand motion for nonsuit

In an action charging defendant with the murder of his wife, the trial court erred in not granting defendant's motion for nonsuit when the evidence, considered in the light most favorable to the State, tended to show an accidental shooting, and there was no evidence tending to show that defendant intentionally discharged the gun or that he handled it so recklessly as to constitute culpable negligence.

**3. Homicide § 21— statement of deceased — sufficiency to support charge of second degree murder**

In a murder prosecution evidence tending to show that the wife said, "Don't shoot me," standing alone, is not sufficient to raise an inference that the defendant husband intentionally pointed the gun at her.

APPEAL by defendant from *Johnston, Judge,* 21 February 1972 Session of Superior Court held in ROWAN County.

The defendant, Bobby Lee Holshouser, was charged in a bill of indictment proper in form with the murder of Letha Eller Holshouser on 21 November 1971.

On the defendant's plea of not guilty, the State offered evidence tending to show that about 9:30 p.m., 20 November 1971, Rowan County Chief Deputy Sheriff Charles E. Herion received a call and went to the Rowan County Memorial Hospital where Dr. Parrott requested him to find Bobby Lee Holshouser and bring him to the hospital for the purpose of giving his consent for surgery to be performed on Mrs. Holshouser. Herion, with some other deputies, arrived at Holshouser's home before 10:00 p.m. where they found the defendant, his sister, and his sister's husband. The deputy told the defendant that he was needed at the hospital to give his consent for his wife to go into surgery. The defendant was seated at the kitchen table with his sister drinking coffee. The defendant hesitated, took a few more sips of coffee, and his brother-in-law said, "Go ahead, Bobby, you are needed." The defendant went out and got in the backseat of the deputy's automobile. The deputy testified he was not at Holshouser's house for more than 3 or 4 minutes. On the way to the hospital the defendant talked about what had happened.

Deputy Sheriff Herion testified:

"Mr. Holshouser stated that, 'I'm going to get rid of that gun.' He stated he got the gun down from over the top of the closet door and his wife said, 'Don't shoot me.' He then stated, 'The gun went off.' He then stated to us that, 'My wife must have loaded the gun'; we proceeded on and when I was approaching I-85, where I-85 crosses highway 52 down here, he asked me if I could not drive faster that I was a police officer and I could use a blue light and siren of this nature and couldn't I go faster. . . . Mr. Holshouser was highly under the influence, holding

onto the car. In my opinion Mr. Holshouser was highly under the influence of some intoxicating liquor.

. . . .

. . . Bobby Holshouser told me that he was taking the gun off the wall to clean it when it went off, that he and his uncle were going rabbit hunting or something Monday and he said he was taking it down to clean it. . . . He told me his wife was seated on the bed at that time. . . . He made a statement on the way to the hospital something to the effect that he did not intentionally fire the gun. He made the statement to me, 'Lord God, I love my wife, I didn't mean to shoot her.'

. . . Mr. Holshouser wasn't hesitant. . . . He wasn't hesitant about signing the papers. . . . He signed the papers after some little time. That's when they operated on his wife. They took her out of the emergency room at 12:02 in the morning. . . . He went over and set with some of his people in the lobby. . . . We stayed in the surrounding there up until Mrs. Holshouser passed away. . . . This was at 2:40. . . . During this time Bobby stayed there stepping back and forth to ask questions about his wife."

After Mrs. Holshouser's death, the deputy returned to the defendant's home where he found a twenty gauge single barrel shotgun hanging on some nails over a closet door and one spent shell on the dresser. There was a small blood stain on the side of the bed. Mrs. Holshouser's death resulted from a shotgun wound in the abdomen.

The jury found the defendant guilty of involuntary manslaughter and from a judgment imposing a prison sentence of 5 to 8 years, the defendant appealed.

*Attorney General Robert Morgan and Associate Attorney Thomas E. Kane for the State.*

*Robert M. Davis for defendant appellant.*

HEDRICK, Judge.

[1] The defendant assigns as error the denial of his timely motions for judgment as of nonsuit.

Involuntary manslaughter is the unlawful killing of a human being, unintentionally and without malice, proximately

resulting from the commission of an unlawful act not amounting to a felony, or resulting from some act done in an unlawful or culpably negligent manner, when fatal consequences were not improbable under all the facts existent at the time, or resulting from the culpably negligent omission to perform a legal duty. 4 Strong, N. C. Index 2d, Homicide, § 6, p. 198; *State v. Curtis,* 7 N.C. App. 707, 173 S.E. 2d 613 (1970); *State v. Honeycutt,* 250 N.C. 229, 108 S.E. 2d 485 (1959).

The record on appeal is silent as to many of the relevant circumstances surrounding this shooting. For instance, there is no evidence to indicate the approximate time of the shooting; how and by whom deceased was transported to the hospital; what time she arrived at the hospital; when defendant's sister and brother-in-law arrived at defendant's home and whether they witnessed the shooting; and the relative location of the bed and the closet door. Had evidence of these and other surrounding circumstances been brought out it would no doubt have aided in the search for the truth. Whether it would have bolstered the State's or defendant's case, we cannot say; but the record would not be left in such an obviously undeveloped condition.

[2, 3] In our opinion when the evidence adduced at the defendant's trial in the Superior Court is considered in the light most favorable to the State, it tends to show an accidental shooting. There is no evidence in this record tending to show that the defendant intentionally discharged the gun or that he handled it so recklessly as to constitute culpable negligence. *State v. Honeycutt, supra; State v. Robinson,* 229 N.C. 647, 50 S.E. 2d 740 (1948). Evidence tending to show that the wife said, "Don't shoot me," standing alone, is not sufficient to raise an inference that the defendant intentionally pointed the weapon at her, *State v. Head,* 214 N.C. 700, 200 S.E. 415 (1939), or that he handled it in such a careless and reckless manner as to amount to culpable negligence. *State v. Honeycutt, supra.*

On this record we hold the Court erred in not allowing the defendant's motion for judgment as of nonsuit. The judgment is

Reversed.

Judges BROCK and MORRIS concur.