STATE v. DUNLAP.

STATE v. JOE DUNLAP.

(Filed 12 October, 1966.)

**1. Homicide § 20—**

Evidence that a nephew badly beat his uncle with a stove-lid lifter and, at the instance of a third person, desisted and left, that the uncle stated that if the nephew came back he was going to shoot him, and that when the nephew returned the uncle shot the unarmed nephew as the nephew stepped in the door, inflicting fatal injury, *held* sufficient to sustain conviction of manslaughter.

**2. Criminal Law § 162—**

Where defendant himself testifies he shot the deceased, the admission of the declaration of deceased that defendant had shot him cannot be prejudicial even though proper predicate for the admission of the declaration as a dying declaration was not made.

**3. Same—**

The withdrawal by the court of evidence competent for the purpose of corroborating a State's witness cannot be prejudicial to defendant.

APPEAL by defendant from *McLean, J.,* March 7, 1966 Regular Schedule A Criminal Session of MECKLENBURG.

Defendant, indicted for second-degree murder in the death of James Dunlap, was convicted of manslaughter. James Dunlap died on November 28, 1965, as a result of gunshot wounds inflicted by defendant, his uncle, on November 24, 1965.

The testimony of Thomas Hunter, the State's witness who was present at the shooting, tended to show: James Dunlap, without defendant's permission, took defendant's shotgun from the possession

STATE *v.* DUNLAP.

of Thomas Hunter with whom defendant had left it. Shortly thereafter defendant and Hunter located James and the gun at the home of a certain Oakes. Defendant hit James "beside the neck with his pocket knife," took the gun from him, and he, James, and Hunter went to defendant's home. As soon as defendant put the gun down, James said to him, "Joe, why did you cut me?" James then knocked defendant down and beat him with a stove-lid lifter for about three minutes. At the instance of Hunter, James desisted and left. When defendant got up, he told Hunter that if James came back there he was going to shoot him. In about twenty minutes James returned. As he stepped in the door, defendant shot him in the left chest with his shotgun. James had nothing in his hand at the time, and no weapon was found on him.

When the police arrived, they found James face down on the living room floor. In great pain, he was clutching his chest with his hands and saying "My uncle, my uncle shot me." Defendant's motion to strike this statement was denied.

Defendant, the only witness to testify in his behalf, said: "I shot him when he came in the door to keep him from whipping me again, because he is a better man than me. . . . When James Dunlap came back in, he said, 'I am going back in and finish killing me *(sic).*'" Defendant denied that he had cut James when he took the gun from him. He conceded that he had cut him on the jaw during the time James had him down beating him.

Defendant appeals from the prison sentence.

*Attorney General T. W. Bruton, Deputy Attorney General Harry McGalliard for the State.*

*T. O. Stennett for defendant appellant.*

PER CURIAM. The evidence was sufficient to sustain the verdict of manslaughter, and defendant's motions of nonsuit were properly overruled. The statements of James Dunlap to the officers that his uncle shot him were incompetent as dying declarations because the State had failed to show that at the time of making them James Dunlap "had full apprehension of his danger (of death), . . ." Stansbury, N. C. Evidence, 2d Ed., § 146 (1963). Although erroneously admitted, the statements do not entitle defendant to a new trial since they were in nowise prejudicial to him. The identity of the man who shot deceased was never in doubt or dispute. Defendant himself testified that he shot James Dunlap. "The admission of testimony cannot be held prejudicial when defendant thereafter makes an admission of the same import." 1 Strong, N. C. Index, Criminal Law § 162 (1962 Supplement).

Defendant's third assignment of error relates to a written statement signed by the witness Hunter, which the State offered in evidence to corroborate him. The statement was admitted over defendant's objection, but the judge later struck it and told the jury not to consider it. This statement was competent for the purpose for which it was admitted. The court's instruction to the jury not to consider it cannot be held to be prejudicial.

In the trial below, we find

No error.