STATE OF NORTH CAROLINA v. JACOB NOBLES, JR.

No. 723SC278

(Filed 24 May 1972)

1. Homicide § 21— second degree murder — sufficiency of evidence

The State's evidence was sufficient for the jury in a prosecution of defendant for second degree murder of his wife, where it tended to show that defendant's 12-year-old daughter heard a shot come from her parents' bedroom, that the daughter ran to the bedroom and found defendant holding a pistol with two spent cartridges and the wife lying on the floor, and that the wife died four days later as a result of the pistol wound received on that occasion, notwithstanding defendant testified the shooting was accidental.

2. Criminal Law § 84; Searches and Seizures § 2— consent to search

The evidence was sufficient to support the trial court's finding that defendant freely and intelligently consented to a search of his home by police officers without a warrant.

3. Criminal Law § 169— admission of evidence — harmless error

Error, if any, in allowing a State's witness to answer over objection the question, "Where did the shot come from?" was cured when the court thereafter sustained the objection and directed the jury to disregard the answer, and defendant testified that the shot came from a gun he was holding.

4. Criminal Law § 75— in-custody statements — failure to waive counsel — cross-examination — impeachment

In this homicide prosecution, the trial court properly allowed the solicitor to cross-examine defendant with reference to his in-custody statements for the purpose of impeaching defendant's trial testimony, notwithstanding defendant was not represented by counsel and had not waived the right to counsel when the statements were made.

5. Criminal Law § 76— erroneous finding of indigency

The trial court erred in finding that defendant was not an indigent at the time he made in-custody statements to police officers.

6. Criminal Law § 75— in-custody statements — failure to waive counsel — impeachment

In this homicide prosecution, the trial court did not err in the admission of testimony by a police officer as to conflicting in-custody statements made by the indigent defendant without having waived counsel, where the statements had no effect other than that of impeaching defendant's trial testimony, notwithstanding the trial court did not instruct the jury that the statements were admitted for that purpose only.

APPEAL by defendant from *Rouse, Judge,* 4 October 1971 Criminal Session of PITT Superior Court.

Defendant was tried upon a bill of indictment proper in form charging him with the murder of his wife. When the case was called for trial the State announced it would seek no greater verdict than murder in the second degree. The jury returned a verdict of guilty of involuntary manslaughter and upon such verdict judgment was entered sentencing defendant to prison for not less than six nor more than eight years. From the judgment, defendant appealed.

*Attorney General Robert Morgan by Assistant Attorney General Robert G. Webb for the State.*

*Mark W. Owens, Jr., and E. Burt Aycock, Jr., for defendant appellant.*

BRITT, Judge.

[1] Defendant assigns as error the failure of the court to grant his timely made motions for judgment as of nonsuit. The evidence for the State revealed the following: Defendant and his wife returned home late at night; defendant had been drinking. They awakened a 12-year-old daughter to gain entrance to their locked home. After defendant and his wife entered the house they went to their bedroom and their daughter returned to her room and bed. The daughter heard her parents arguing and then heard a shot come from her parents' bedroom. The daughter ran into her parents' bedroom and found her parents by themselves. Defendant was holding a pistol in his hand with two spent cartridges in it and his wife was lying on the floor. Defendant's wife told the daughter to go to her aunt's house and call the rescue squad. Some four days later the wife died as a result of the pistol wound received that night.

Defendant testified thusly: After he and his wife were admitted to the house by their daughter and went to their bedroom, he heard some dogs at the back of the house. His wife took the pistol out of her pocketbook and laid it on the bed. He told his wife that he was going outside and shoot or scare the barking dogs. His wife told him not to, a struggle over possession of the gun followed and his wife was shot. Defendant was not mad with his wife and had no intent to hurt her.

The court in *State v. Rowland*, 263 N.C. 353, 139 S.E. 2d 661 (1965) stated: "When the motion for nonsuit calls into

question the sufficiency of circumstantial evidence, the question for the Court is whether a reasonable inference of the defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty." See also, *State v. Hart,* 12 N.C. App. 14, 182 S.E. 2d 254 (1971). When the evidence in the instant case is considered in the light most favorable to the State, and the State is given every reasonable inference from the evidence, *State v. Cook,* 273 N.C. 377, 160 S.E. 2d 49 (1968), we think the evidence was sufficient to survive the motions for nonsuit and the assignment of error is overruled.

[2]  Defendant assigns as error the admission of evidence (a .22 caliber pistol) resulting from a search of his home. The sole question presented is whether the defendant freely and intelligently waived his right to require the police to obtain a search warrant. There are sufficient facts in the record to support the finding, following a voir dire hearing in the absence of the jury, that the search was legal, the consent of the owner being freely and intelligently given, without coercion, duress or fraud. The evidence sufficiently rebuts the presumption against the waiver of fundamental constitutional rights. *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755 (1971).

[3]  Defendant assigns as error the court's allowing the State to ask its witness, "Where did the shot come from?" and allowing the witness to answer over objection. The error, if any, was corrected when the court sustained the objection and directed the jury to disregard the answer. In any event the error was not prejudicial because defendant later testified that the shot came from the gun he held in his hand. *State v. Perry,* 276 N.C. 339, 172 S.E. 2d 541 (1970) ; *State v. Dunlap,* 268 N.C. 301, 150 S.E. 2d 436 (1966).

[4]  In his next assignment of error defendant contends the trial court erred in allowing the solicitor to cross-examine defendant with respect to certain statements allegedly made by him to police while he was in custody following the shooting. The State contends that it was proper for the solicitor to ask defendant about statements made by him as to how the shooting occurred which statements were not only contradictory to defendant's version of the shooting as given by him on direct examination but the statements contradicted each other. De-

fendant relies on *State v. Catrett,* 276 N.C. 86, 171 S.E. 2d 398 (1970), and *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561 (1971).

Assuming, *arguendo,* that defendant's in-custody statements were obtained without safeguarding his constitutional rights, we think the State's contention is supported by *State v. Bryant,* 280 N.C. 551, 187 S.E. 2d 111 (1972) ; we quote from pp. 555-556 of the opinion by Justice Higgins:

> Catrett was decided on June 6, 1970, and was based on our interpretation of the exclusionary rule in Miranda. Some other appellate courts made this same interpretation. However, on February 24, 1971, the Supreme Court of the United States decided *Harris v. New York,* 28 L.Ed. 2d 1, reviewing the Miranda exclusionary rule. In *Harris* the Court held "that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements" which were made during in-custody interrogation, without counsel, and without waiver of rights.

> In our case the use of the defendant's in-custody admissions to impeach and contradict his testimony before the jury was proper and his objections thereto are not sustained. The defendant's admissions were not offered to make out the prosecution's case. They were offered to tear down the defendant's defense. *State v. Lynch, supra,* did not involve admissions offered for the purpose of impeaching the defendant's testimony before the jury.

> The decision in *Harris* warranted the use of the impeaching testimony. In view of the importance we attach to the *Harris* decision and its current unavailability to some of our trial courts, we quote extensively from it:

> "Some comments in the Miranda opinion can indeed be read as indicating a bar to use of an uncounseled statement for any purpose, but discussion of that issue was not at all necessary to the Court's holding and cannot be regarded as controlling. Miranda barred the prosecution from making its case with statements of an accused made while in custody prior to having or effectively waiving counsel. It does not follow from Miranda that evidence inadmissible against an accused in the prosecution's case in chief is

barred for all purposes, provided of course that the trust-worthiness of the evidence satisfies legal standards.

\* \* \* \* \* \* \* \* \* \*

It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the Weeks doctrine would be a perversion of the Fourth Amendment.

. . . (T)here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility. 347 U.S., at 65, 98 L.Ed. at 507.

\* \* \* \* \* \* \* \* \* \*

Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. See *United States v. Knox,* 396 U.S. 77, 24 L.Ed. 2d 275, 90 S.Ct. 363 (1969); cf *Dennis v. United States,* 384 U.S. 855, 16 L.Ed. 2d 973, 86 S.Ct. 1840 (1966). Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross-examination and impeachment.

The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by use of his earlier conflicting statements."

The assignment of error is overruled.

Finally, defendant assigns as error the testimony of Police Officer William George, offered by the State in rebuttal, in

State v. Nobles

which the officer related conflicting statements made by defendant with respect to how the shooting occurred. Before admitting this testimony, the trial court conducted a voir dire hearing, found facts and concluded, among other things, that defendant was not indigent at the time of the interrogation and "had sufficient resources to secure and employ counsel had he chose to do so for purposes of that interrogation."

[5] The interrogation took place on 27 June 1971 and on 2 July 1971 defendant was declared to be indigent and counsel was appointed to represent him for subsequent proceedings. It would appear that the conclusion of law of the trial court was erronous under the very recent case of *State v. Wright*, 281 N.C. 38, 187 S.E. 2d 761 (1972). However, we think the testimony was admissible under the principles declared in *Bryant* and *Harris* quoted above.

[6] In *Bryant* the statements were offered solely for the purpose of impeaching the defendant's testimony and the court carefully instructed the jury that the statements were admitted for that purpose only. In the case at bar there is an absence of any such limiting instructions by the court. While we feel that limiting instructions would have been appropriate in this case and can envision instances where their absence would constitute prejudicial error, we hold that the omission in this case was not prejudicial to the defendant. Five statements relating to the shooting were read to the defendant and he was asked if he made these statements during his interrogation by police officers. Defendant was unable to recall making the statements. The statements had no effect other than that of impeaching defendant's testimony given on direct examination. The defendant's admissions were not offered to make out the prosecution's case; they were offered to tear down the defendant's defense. *State v. Bryant, supra.*

We hold that the defendant had a fair trial, free from prejudicial error, and the sentence imposed was within the limits provided by statute.

No error.

Judges PARKER and HEDRICK concur.