State v. Christopher

---

STATE OF NORTH CAROLINA v. PHYLLIS ANN CHRISTOPHER

No. 7525SC775

(Filed 21 April 1976)

**Homicide § 30— second degree murder prosecution — failure to submit manslaughter**

    In this prosecution for second degree murder of defendant's hus-band, the trial court erred in failing to submit manslaughter as a possible verdict where the State's evidence tended to show that defend-

ant had been a patient in a hospital because of a nervous condition, she was taken to a home prior to being taken to a more convenient hospital, she did not want to reenter a hospital, defendant and her husband were in a bedroom when two shots were fired, defendant ran from the bedroom and threw a pistol on the floor, deceased was found lying across a bed, and deceased died from two wounds received from a weapon he had had for about three weeks.

APPEAL by defendant from *Ferrell, Judge.* Judgment entered 30 April 1975 in Superior Court, BURKE County. Heard in the Court of Appeals 21 January 1976.

*Attorney General Edmisten, by Assistant Attorney General Archie W. Anders and Associate Attorney Wilton E. Ragland, Jr., for the State.*

*Byrd, Byrd, Ervin & Blanton, P.A., by Robert B. Byrd, for defendant appellant.*

VAUGHN, Judge.

Defendant was indicted for the murder of her husband. The homicide occurred on 14 February 1974.

On 22 April 1974, defendant was committed to Dorothea Dix Hospital for mental observation. She remained in that hospital for about a month. Thereafter, she was admitted to Broughton Hospital as an emergency patient and remained there for about ten days. On 11 November 1974, the court again committed her to Dorothea Dix Hospital for mental and physical evaluation.

When the case came on for trial on 28 April 1975, the court found that defendant was competent to stand trial.

She was placed on trial for murder in the second degree. Under the charge of the court the only permissible verdicts were guilty of murder in the second degree, not guilty or not guilty by reason of insanity.

For about two weeks prior to the homicide, defendant had been a patient in a hospital in Lincolnton apparently because of a nervous condition that had existed for several months. Her husband wanted to remove her from the hospital in Lincolnton and place her in a hospital in Hickory because it would be more convenient to take care of her. The husband, defendant's sister and another brought her from the hospital to the Stillwell home on 12 February 1974. Defendant did not want to enter the hos-

State v. Christopher

pital in Hickory. Defendant, her husband and a number of others remained at the Stillwell home for about two days. During this time defendant appeared to be very weak and pale. She bit her nails all the time and just sat around and stared out of the window. She did not speak or talk to anyone and did not appear to eat or sleep.

The 16-year-old son of defendant and deceased testified that he, his parents and others had been together in the Stillwell home for most of the day on 14 February 1974. So as far as he knew, there had been no argument between his parents. During the afternoon his parents went into a bedroom alone and closed the door. The son remained in the living room. After the couple had been in the bedroom for some time the son heard two shots, saw his mother run out of the bedroom and throw a pistol on the floor. Prior to the time he heard the shots the son had heard no noises from the bedroom. Immediately after the shooting, defendant ran to a house about one quarter of a mile away from the Stillwell residence and telephoned the Sheriff's Department.

The deceased was found lying across a bed with his clothes on. He died as the result of two gunshot wounds. One bullet had entered the side of his head just behind his right ear and the other on the right side of his neck. No powder burns were observed about the wounds.

The death weapon was a .22 caliber pistol that deceased had owned for about three weeks. Six live shells and two spent shells were found in the pistol.

The defendant did not testify and no further evidence was introduced concerning the circumstances of the killing.

Defendant offered evidence designed to show that she was insane at the time of the killing. This evidence included the testimony of Dr. William Taylor, a psychiatrist employed at Dorothea Dix Hospital who testified that he did "not believe that she had the capacity to know the wrongfulness of her acts."

The verdict was guilty of murder in the second degree and judgment imposing a prison sentence of not less than fifteen nor more than eighteen years was entered.

We have considered all of defendant's assignments of error and conclude that, except for No. 10, none of them disclose error so prejudicial as to require a new trial.

---

In assignment of error No. 10 defendant contends that it was error for the judge to refuse to allow the jury to consider manslaughter as one of its possible verdicts. We agree and order a new trial.

Murder in the second degree is the unlawful killing of a human with malice but without premeditation and deliberation. The *intentional* use of a deadly weapon as a weapon when death proximately results from such use gives rise to the presumptions that the killing was unlawful and done with malice. Manslaughter is the unlawful killing of a human without malice and without premeditation and deliberation. *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393. The circumstantial evidence relied on by the State is just as consistent with a lesser degree of homicide as it is with murder in the second degree.

New trial.

Judges MARTIN and CLARK concur.