STATE OF NORTH CAROLINA v. HUBERT MOSLEY

No. 7628SC996

(Filed 1 June 1977)

**1. Criminal Law § 87.2— questions not leading**

Questions propounded by the district attorney to a State's witness which directed the witness's attention to the subject matter at hand without suggesting an answer or sought to aid the witness's recollection or refresh her memory when the witness had exhausted her memory without stating the particular matters required were not leading questions and were permissible in the discretion of the court.

**2. Criminal Law § 53.1— bullet entry — explanation of discrepancy between testimony and report**

Where defendant offered testimony by the medical examiner and the medical examiner's written report which conflicted as to which side of the decedent's neck the fatal bullet entered, testimony elicited by the district attorney from the medical examiner that an opinion after an autopsy was more reliable than his opinion gained from a cursory examination in the emergency room was not objectionable as hearsay or conjecture and was properly admitted to explain the discrepancy between the medical examiner's direct testimony and his medical report.

**3. Homicide § 21.7— second degree murder — sufficiency of evidence**

The evidence was sufficient to be submitted to the jury on the issue of defendant's guilt of second degree murder and to support a verdict of guilty of voluntary manslaughter where it tended to show that defendant and deceased lived together in defendant's residence; they argued frequently and defendant had threatened to kill deceased; the body of deceased was found lying on the bedroom floor of defendant's residence; defendant told officers that he and deceased had been struggling over a gun and it went off and shot her; defendant produced the gun and there were two spent rounds and four live rounds in the cylinder; one bullet had entered the left side of deceased's neck and exited on the right side; this gunshot wound

caused deceased's death; and both defendant and deceased were right handed.

APPEAL by defendant from *Baley, Judge.* Judgment entered 25 August 1976 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 4 May 1977.

Defendant was charged with the murder of Jay Ola Morris on 8 April 1976. Upon defendant's plea of not guilty, he was tried by jury and found guilty of voluntary manslaughter. Judgment was entered imposing a prison sentence of not less than eight nor more than twelve years.

The State's evidence tends to show the following: On 8 April 1976, and for some time prior thereto, defendant and Jay Ola Morris lived together in defendant's home at 57 Washington Road in Asheville along with Jay Ola's daughter, Belinda, and Belinda's child. Jay Ola and defendant argued frequently, and defendant had threatened to kill Jay Ola. Shortly after 10:00 p.m., in response to a call, police officers went to defendant's residence. Jay Ola Morris' body was lying on the bedroom floor with a pool of blood under her head. Defendant told the officers that he and Jay Ola had been struggling over a gun, and it went off and shot her. Defendant produced a .38 caliber, six-shot revolver and identified it as the gun they struggled over. There were two spent rounds and four live rounds in the cylinder. An autopsy disclosed that one bullet had entered the left posterior neck, ranged slightly forward, transected the cervical spinal cord, and exited the right neck beneath the right ear. This gunshot wound caused the death of Jay Ola Morris. The autopsy further disclosed that deceased's blood alcohol content was the equivalent of .27 on the breathalyzer. Defendant was also under the influence of alcohol.

Defendant's evidence tends to show the following: Jay Ola Morris had been living with defendant for about three years, during which time defendant supported her. Jay Ola was prone to drink heavily from time to time. When defendant arrived home from work on 8 April 1976, Jay Ola was drinking. She began trying to discuss going on a trip to New York. Defendant told Jay Ola she was in no shape to discuss the trip and that they would talk about it later. Jay Ola became angry. Defendant told her he had to go to his daughter's house on business. Jay Ola told defendant he could not go, and they

argued and scuffled on the porch and in the house. Jay Ola took the .38 caliber pistol from a drawer in the bedroom, and defendant scuffled with her over the pistol. Both Jay Ola and defendant were right handed. Two shots were fired about five seconds apart. Defendant knew of only one shot. When the pistol fired, Jay Ola fell to the floor in the bedroom. The medical examiner testified that the bullet entered on the left side of the neck and came out on the right side; however, his report stated: "Gunshot wound of the right side of the neck and passing out on the left and going through the cord." The report was introduced in evidence by the defendant.

On cross-examination the medical examiner explained that the report was dictated from his cursory examination of the body in the hospital emergency room but that the later autopsy by the pathologist disclosed that the actual path of the bullet was from the left side of the neck to the right.

*Attorney General Edmisten, by Associate Attorney Sandra M. King, for the State.*

*Penland & Barden, by Talmage Penland, for the defendant.*

BROCK, Chief Judge.

[1] In his first assignment of error defendant argues that the trial court committed prejudicial error in allowing the district attorney to propound to the State's witness questions which defendant contends were leading. An examination of the questions does not convince us that they fall within the traditional abuse of suggesting the answers or seeking to secure a yes or no answer. The district attorney was either directing the witness's attention to the subject matter at hand without suggesting an answer or was seeking to aid the witness's recollection or refresh her memory when the witness had exhausted her memory without stating the particular matters required. Both are permissible in the discretion of the trial judge.

In the recent case of *State v. Greene,* 285 N.C. 482, 206 S.E. 2d 229 (1974), the Supreme Court had the following to say about leading questions:

"It is generally recognized that an examining counsel should not ask his own witness leading questions on direct examination. A leading question has been defined as one

State v. Mosley

which suggests the answer desired and is a question which may often be answered by yes or no. (Citations omitted.) The rule prohibiting leading questions is not based on a technical distinction between direct examination or cross-examination, but on the alleged friendliness existing between counsel and his witness. It is said that this relationship would allow the examiner to provide a false memory to the witness by suggesting the desired reply to his question. (Citations omitted.) However, it is firmly entrenched in the law of this State that it is within the sound discretion of the trial judge to determine whether counsel shall be permitted to ask leading questions, and in the absence of abuse the exercise of such discretion will not be disturbed on appeal. (Citations omitted.)

"The trial judge in ruling on leading questions is aided by certain guidelines which have evolved over the years to the effect that counsel should be allowed to lead his witness on direct examination when the witness is: (1) hostile or unwilling to testify, (2) has difficulty in understanding the question because of immaturity, age, infirmity or ignorance or where (3) the inquiry is into a subject of delicate nature such as sexual matters, (4) the witness is called to contradict the testimony of prior witnesses, (5) the examiner seeks to aid the witness' recollection or refresh his memory when the witness has exhausted his memory without stating the particular matters required, (6) the questions are asked for securing preliminary or introductory testimony, (7) the examiner directs attention to the subject matter at hand without suggesting answers and (8) the mode of questioning is best calculated to elicit the truth. (Citations omitted.)"

[2] In his second assignment of error defendant contends that the trial court committed prejudicial error in permitting certain testimony by Dr. Walker, the medical examiner. Defendant called Dr. Walker as a witness for the defense. This was obviously done for the purpose of placing before the jury the medical examiner's report which stated: "Gunshot wound of the right side of the neck and passing out on the left and going through the cord." However, Dr. Walker testified on direct examination that the "track of the bullet extended from the skin of the neck on the left side passing all the way through and coming out on the right side." This testimony was the exact opposite of the

State v. Mosley

witness's written report. Defendant did not attempt to clarify the discrepancy; he merely introduced the written report in evidence.

The State's witness, the pathologist who performed the autopsy, had testified on direct examination, as did defendant's witness, that the bullet entered on the left side of the neck and exited on the right side. The pathologist's testimony was also the exact opposite of the written report by the medical examiner. On cross-examination of defendant's witness, the medical examiner, the district attorney sought to clarify the discrepancy between his testimony on direct examination and the content of his written report. The medical examiner testified that the statement on his written report was his opinion at that time. He continued: "The pathologist had a different opinion after he was able to expose the neck." The examination of the witness continued as follows:

"Q. And after exposing the neck would he be in a position more fully to determine?

"A. I think so.

"Q. Then although you had indicated in this preliminary medical examiner's report that it was the right side of the neck and passing out the left side, that was probably an error, is that what you are telling us now?

OBJECTION BY THE DEFENSE.

OBJECTION OVERRULED.

"A. I'm afraid I'm a little confused. My statement, report statement, stated it came in the right side of the neck, but after the pathologist was able to open the neck, he could determine it came from the other way.

OBJECTION BY THE DEFENSE.

"A. There were 2 small holes. You couldn't tell one from the other.

OBJECTION OVERRULED.

"My inspection was a cursory one, just a physical examination of the body. There is no question whatsoever but that she had died from a gunshot wound. It's easier and

better to determine the cause of death after you've cut the person open and run probes through it."

Obviously the path of the bullet was an important feature in determining whether the shooting was an accident. Jay Ola was right-handed, and in struggling with defendant over the pistol, she could have been holding the gun in her right hand if the bullet entered the right side of her neck, traveled slightly to the rear, and exited at her rear left neck. On the other hand, it would be unlikely that she was holding the gun if the bullet entered her left rear neck, traveled slightly forward, and exited at her right neck. Defendant was more content with the statement in the medical examiner's written report, but that does not render incompetent the explanation by the medical examiner of the discrepancy between his testimony on direct examination and the written report. Defendant offered both the testimony and the report of the medical examiner. The State was entitled to clarify the discrepancy between the two. The testimony was not objectionable as hearsay or conjecture. The witness was merely explaining that an opinion after an autopsy was more reliable than his opinion gained from a cursory examination in the emergency room. Also, the State was entitled to cross-examine defendant's witness and to impeach the accuracy of his written report.

[3] Defendant timely made motions for nonsuit at the close of the State's evidence and again at the close of all the evidence. He assigns as error the denial of his motion made at the close of all the evidence. When a defendant offers evidence, he waives the motion for nonsuit made, either actually or by virtue of G.S. 15-173.1, at the close of the State's evidence; and only his motion lodged at the close of all the evidence will be considered. *State v. Paschall,* 14 N.C. App. 591, 188 S.E. 2d 521 (1972). "In considering the motion for nonsuit lodged at the close of all the evidence, any portion of defendant's evidence which is favorable to the State and any portion of defendant's evidence which explains or clarifies the State's evidence is to be considered." *Id.* at 593, 188 S.E. 2d at 522.

"When the motion for nonsuit calls into question the sufficiency of circumstantial evidence, the question for the Court is whether a reasonable inference of the defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy

State v. Mosley

them beyond a reasonable doubt that the defendant is actually guilty." *State v. Rowland,* 263 N.C. 353, 358, 139 S.E. 2d 661, 665 (1965); *State v. Nobles,* 14 N.C. App. 340, 188 S.E. 2d 600 (1972).

We have considered *State v. Jones,* 280 N.C. 60, 184 S.E. 2d 862 (1971); *State v. Allred,* 279 N.C. 398, 183 S.E. 2d 553 (1971); *State v. Griffin,* 273 N.C. 333, 159 S.E. 2d 889 (1968); and *State v. Holshouser,* 15 N.C. App. 469, 190 S.E. 2d 420 (1972), cited by the defendant in support of his argument for nonsuit. As conceded by defendant, these cases are naturally distinguishable on their facts from the present case. We think they are also sufficiently distinguishable from the present case to render them not controlling upon these facts.

The present case is more comparable and analogous to *State v. Nobles, supra,* and *State v. Christopher,* 29 N.C. App. 231, 223 S.E. 2d 835 (1976). When the evidence in the present case, actual and circumstantial, offered by the State and by the defendant, is considered in the light most favorable to the State, and when the State is given every reasonable inference arising therefrom, we think the evidence is sufficient to survive the motion for nonsuit and to require submission of the case to the jury.

Defendant argues one assignment of error to the trial judge's instructions to the jury and one assignment of error to the failure of the trial judge to instruct the jury. We see no point in a discussion of the instructions and these assignments of error. We have reviewed the jury instructions, and in our opinion, they were clear and adequate to apprise the jury of the applicable principles of law.

Defendant's final assignment of error is formal and requires no discussion.

In our opinion defendant received a fair trial free from prejudicial error.

No error.

Judges VAUGHN and CLARK concur.