STATE OF NORTH CAROLINA v. ANNIE KATE WATKINS

No. 7917SC709

(Filed 18 March 1980)

1. **Criminal Law § 42.6; Homicide § 20— bullet taken from body—failure to show chain of custody—no prejudice**

   Even if the chain of custody of a bullet taken from deceased's body was not sufficiently established to permit its admission in evidence, defendant was not prejudiced by its admission or by testimony of the doctor who removed it from deceased's body where the doctor merely explained the shape of the bullet and traced its passage through the body but expressed no opinion as to whether the bullet was fired from a gun found at the murder scene, and the bullet was relevant to the cause of death and was consistent with other exhibits admitted without objection.

2. **Homicide § 28.1— self-defense—insufficient evidence**

   Evidence that defendant stated that she "did not mean to shoot" deceased, that the shooting was accidental, and that deceased had threatened her on another occasion did not require the court to instruct on self-defense.

3. **Homicide § 21.7— second degree murder—sufficiency of evidence**

   The State's evidence was sufficient for the jury in a prosecution of defendant for the second degree murder of her husband where there was some evidence that defendant intentionally shot her husband during a domestic quarrel.

4. **Criminal Law § 132— motion to set aside verdict—discretion of court**

   Motions to set aside the verdict are addressed to the discretion of the trial court, and the refusal to grant them is not error absent a showing of abuse of that discretion.

APPEAL by defendant from *Smith (David I.), Judge.* Judgment entered 26 March 1979 in Superior Court, STOKES County. Heard in the Court of Appeals 9 January 1980.

On 29 January 1979, defendant was indicted on the charge of the first degree murder of her husband, Donald Edward Watkins. Defendant pled not guilty, was tried and convicted of murder in the second degree, and sentenced to a prison term.

At trial the State's evidence tended to show that between two and three o'clock in the afternoon on 3 December 1978, defendant and deceased visited the home of Barbara Ann Welch, where they had "a little beer to drink." At about three o'clock defendant and deceased returned to their home. Police officers

were summoned to defendant's residence around three-thirty and found defendant's husband lying on the kitchen floor with a gunshot wound in his chest. He died shortly thereafter. An officer testified that, after being warned of her *Miranda* rights, defendant said that "she was tired of him lying to her. She said that she shot him. She kept saying four or five times that she was tired of him lying to her." Defendant's sworn statement was also admitted into evidence, wherein defendant stated that just before the shooting she and deceased were "arguing about some other women that Mr. Watkins had apparently been dating and that [she] was talking on the phone with one of the women and her husband was cursing her at that time." She also stated that her husband "had cut her with a knife and that he had also shot at her on [a] previous occasion, but that [deceased] had not threatened her on the day of 12/3/78 the day of the shooting." Defendant "admitted shooting her husband but said that she did not mean to shoot him."

Defendant's evidence tended to show that deceased had threatened to kill her on a prior occasion. Sometime before the incident, she found deceased's pistol between the mattresses of their bed and, to protect herself, she hid it. On the day in question, defendant placed the gun in her pocketbook shortly before they visited Barbara Welch. Upon returning home, defendant telephone a relative while being interrupted by deceased. When deceased left the house, defendant attempted to remove the gun from her pocketbook and hide it elsewhere. Deceased appeared and tried to gain control of the gun, which went off in the ensuing struggle. Throughout the trial, defendant maintained that her husband's death was accidental; that she never stated to anyone that deceased had lied to her; and that she loved her husband very much. Defendant's daughter testified that she was in the house at the time of the shooting but did not hear defendant and deceased argue before she heard the gunshot.

Defendant's motions to dismiss, to set aside the verdict, for judgment notwithstanding the verdict, and for a new trial were denied.

*Attorney General Edmisten, by Associate Attorney T. Michael Todd, for the State.*

*White and Crumpler, by Fred G. Crumpler, Jr., V. Edward Jennings, Jr., G. Edgar Parker, Harrell Powell, Jr., Edward L. Powell, Jr., and Frank J. Yeager, for defendant appellant.*

MORRIS, Chief Judge.

There are fourteen assignments of error in the record. However, only four are brought forward and argued in defendant's brief. We consider only those assignments.

[1] Defendant first contends that the trial court erred by admitting into evidence the alleged murder bullet over defendant's objection without establishing chain of custody. A medical doctor from the office of the Chief Medical Examiner in Chapel Hill, North Carolina, testified that he recovered a bullet which had been lodged in deceased's arm as a result of the shooting. The doctor was given a cellophane bag with the alleged bullet in it, which he identified as the bullet he had taken from deceased's arm. Regarding the bullet, he testified further:

> This is a large caliber lead bullet which is pointed on one side due to the fact in its course through the body it passed through one of the ribs and also it struck the right upper arm bone. It is badly mutilated as a result of passing through the bones.

There is nothing in the record which indicates who had possession of the bullet from the time it was extracted from deceased's body to the time it was introduced into evidence at trial. In this regard, we express no opinion as to whether the doctor's in-court identification of the bullet was sufficient to establish chain of custody of that evidence. However, assuming arguendo, that chain of custody was not properly established, we find little prejudice in the testimony concerning this exhibit. As seen above, the doctor merely explained the shape of the bullet and traced its passage through the body. He expressed no opinion as to whether the bullet was fired from the gun found at the murder scene. Furthermore, the exhibit was relevant to the issue of cause of death and was consistent with the other exhibits admitted without objection. Defendant's assignment of error is overruled.

[2] Defendant's next assignment of error is that the court improperly failed to charge the jury on self-defense or the burden of proof for self-defense. Defendant argues that there was clear evidence supporting an instruction on the doctrine of self-defense in that defendant stated that she "did not mean to shoot" her husband; that the shooting was "accidental"; and that deceased had previously threatened her. Upon review we find no merit in defendant's contention. The applicable rule is stated as follows:

> [T]here must be evidence . . . that the party assaulted believed at the time that it was necessary to kill his adversary to prevent death or great bodily harm, before he may seek refuge in the principle of self-defense, and have the jury pass upon the reasonableness of such belief.

*State v. Rawley*, 237 N.C. 233, 237, 74 S.E. 2d 620, 623 (1953). *See also State v. Allmond*, 27 N.C. App. 29, 217 S.E. 2d 734 (1975). Upon review, we find no construction of the evidence which would support such an instruction. Nothing in the evidence indicates defendant believed she was in real or apparent danger of death or serious bodily injury. Further, defendant stated in her statement to the police that, although he had threatened her on prior occasions, her husband had not threatened her on the day of the shooting. This assignment of error is, therefore, overruled.

[3] Defendant also assigns error to the trial court's denial of defendant's motion to dismiss the charge of murder in the second degree at the close of the State's evidence and at the close of all the evidence. In this case, defendant offered evidence, thereby waiving the motion for nonsuit made at the close of the State's evidence. *State v. Mosley*, 33 N.C. App. 337, 235 S.E. 2d 261, *cert. denied*, 293 N.C. 162, 236 S.E. 2d 706 (1977). We, therefore, consider only the motion lodged at the close of all the evidence.

In ruling on a motion to dismiss, the court is concerned only with the sufficiency of the evidence and not its weight. *State v. McNeil*, 280 N.C. 159, 185 S.E. 2d 156 (1971). The evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom. *State v. Bell*, 285 N.C. 746, 208 S.E. 2d 506 (1974).

If the trial court determines that a *reasonable* inference of the defendant's guilt *may* be drawn from the evidence, it

must deny the defendant's motion and send the case to the jury even though the evidence may also support reasonable inferences of the defendant's innocence.

*State v. Smith,* 40 N.C. App. 72, 78, 252 S.E. 2d 535, 540 (1979); *State v. Bell, supra.*

When taken in a light most favorable to the State, we find the evidence sufficient to go to the jury on the charge of second degree murder. "Murder in the second degree is the unlawful killing of a human being with malice, but without premeditation and deliberation." *State v. Cates,* 293 N.C. 462, 466, 238 S.E. 2d 465, 468 (1977). These elements may be presumed present where the State carries its burden of satisfying the jury from the evidence beyond a reasonable doubt that the defendant intentionally used a deadly weapon and inflicted wounds proximately resulting in the death of another. *State v. Drake,* 8 N.C. App. 214, 174 S.E. 2d 132, *cert. denied,* 277 N.C. 114 (1970). Here, there was some evidence to indicate that defendant intentionally shot deceased during a domestic quarrel. We, therefore, conclude that the evidence before the court, although contradicted by defendant's evidence, provided a reasonable basis upon which the jury could find that defendant had committed the crime charged. It was then for the jury to determine whether the facts taken singly or in combination satisfied them beyond a reasonable doubt that defendant was in fact guilty. *See State v. Barbour,* 43 N.C. App. 143, 258 S.E. 2d 475 (1979); *State v. Smith, supra.*

[4] Defendant finally assigns error to the trial court's denial of her motion for "judgment notwithstanding the verdict". We note that G.S. 15A-1414 and G.S. 15A-1415 set out some of the errors of law committed by the trial judge which may be the subject of a post-trial motion for appropriate relief. However, regardless of the name given the motion by defendant, it was properly denied. The evidence was supportive of the verdict returned by the jury. Disposition of such post-trial motions is within the discretion of the trial court and the refusal to grant them is not error absent a showing of abuse of that discretion. *See State v. McKenna,* 289 N.C. 668, 224 S.E. 2d 537, *death penalty vacated,* 429 U.S. 912, 50 L.Ed. 2d 278, 97 S.Ct. 301 (1976). We find none here. This assignment of error is overruled.

The defendant received a fair trial free from prejudicial error.

No error.

Judges PARKER and HILL concur.