STATE OF NORTH CAROLINA v. ABRAHAM BATTS

No. 22

(Filed 5 May 1981)

1. Criminal Law § 87— witness's unresponsive answer—admissibility

There was no merit to defendant's contention in a second degree murder
case that the trial court erred in allowing a witness to testify that, when he
first observed the fight in question, the homicide victim was trying to fight off

defendant's brother, since the witness was merely describing what he saw when he first observed the fight and was not asserting that defendant's brother was the aggressor; and even if the witness's answer was unresponsive, it was nevertheless admissible, since it did not produce irrelevant, incompetent, or otherwise inadmissible information.

### 2. Criminal Law § 87.1— leading question

In a second degree murder case where defendant contended that he spent the entire evening of the crime in the company of his girlfriend, the trial court did not err in sustaining the State's objection to defense counsel's question asked of the girlfriend, "Was it humanly possible for [the defendant] to have been in a fight that night without your knowing it or seeing it?" since the question suggested the desired response and was therefore leading.

### 3. Criminal Law § 117— instruction limiting consideration of evidence

Where a witness's statements were hearsay and were admissible only for the purpose of impeachment or corroboration, the trial court did not err in instructing the jury that the witness's testimony should be considered by them only as it related to her credibility as a witness.

### 4. Homicide § 21.7— second degree murder—sufficiency of evidence

In a second degree murder case where the victim died from stab wounds, and the knife used in the stabbing was not introduced into evidence nor was there testimony as to its size or the length of the blade, the manner in which the victim was stabbed and the penetration of the knife into the heart and lungs were sufficient evidence of use of a deadly weapon and of malice to withstand a motion for nonsuit.

APPEAL by defendant from judgment of *Allsbrook, Judge*, imposed at the 1 July 1980 Criminal Session of Superior Court, WILSON County.

Defendant was charged in an indictment, proper in form, with the murder of Kenneth Phelps. At trial, the State announced that it would proceed on a charge of second degree murder. The jury found defendant guilty of murder in the second degree, and he was sentenced by the court to a maximum and minimum term of life in prison. He appeals to this Court as a matter of right.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Richard L. Griffin, for the State.*

*Robert A. Farris for the defendant.*

CARLTON, Justice.

I.

Evidence for the State tended to show that Luther Jones, a Wilson policeman, went to the 500 block of East Nash Street in Wilson shortly after 11 p.m. on 9 January 1980. Over 100 people were gathered in front of the L & J Party Pack, an "entertainment club." Officer Jones walked across the street and observed a black male, whom he recognized as Kenneth Phelps, lying on the sidewalk bleeding from wounds to his chest and hand. Phelps was conscious at that time, and Officer Jones attempted to make him comfortable. Jones inquired if anyone in the crowd had witnessed the incident, but received no specific response. He did not find any weapons at the scene.

Matthew Henderson testified that he was in the company of Kenneth Phelps on the evening of 9 January 1980. Phelps joined him as Henderson left work sometime after 7 p.m., and they went to the Pack House on East Nash Street. They left and went next door to Adam's Nook where they drank beer with two women, Gwyn and Sheila. Some fifteen or twenty minutes later the defendant arrived and told Sheila, "Every time I leave you and come back, you're with a damn nigger." Henderson and Phelps then left Adam's Nook. When they were outside Phelps gave Henderson some money and Henderson went to a wine store and bought some wine. When he came out of the store, he saw a crowd of people standing on the street. He walked through the crowd and saw defendant and his brother, Percy. Kenneth Phelps was "trying to fight Percy Batts off of him." Defendant was standing beside a telegram post at that time, and, according to Henderson, had a knife with a long blade. Percy Batts had a knife and cut Phelps' hand. Phelps pushed Percy away from him and trotted away, with defendant and Percy in pursuit. Phelps stopped with his back against a wall and sat down on the ground. Defendant cut Phelps on the leg as Phelps attempted to kick Percy Batts off him. As Phelps moved three or four inches from the wall, defendant walked behind Phelps, grabbed him by the neck and stabbed him "about two times" in the chest. Defendant then closed his knife. The police were called and defendant and Percy Batts disappeared into the crowd.

A pathologist testified that the cause of death was hemorrhage secondary to stab wounds. In his opinion, the characteristics of the wounds observed in the chest area could be consistent with the deceased being grabbed from behind about the neck and then stabbed in the chest area and the leg wound could have been inflicted while Phelps was lying on his back and attempting to kick someone in front of him.

Defendant testifies that on the evening of 9 January 1980 he went downtown with his girlfriend, Sheila, and left between 8 and 9 p.m. to go to his sister's house. He was never separated from Sheila and did not see Kenneth Phelps that night. He never stabbed Kenneth Phelps with a knife. Percy Batts testified that he saw his brother leave the downtown area about 9 or 9:30 p.m. on that night. He saw Kenneth Phelps that night but did not see any fight. He also did not see Matthew Henderson that evening.

Sheila Ward, defendant's girlfriend, testified that she was with defendant the entire evening, that defendant and Kenneth Phelps argued on the sidewalk, and that she grabbed defendant by the arm and they left. Kenneth Phelps was not injured at that time. She and defendant spent the night at defendant's sister's house.

Defendant's sister testified that defendant arrived at her house around 9:30 p.m. and spent the entire night there. She also testified that after the incident, she overheard Matthew Henderson state to a policeman that he was not coming to court because he did not know what had happened, that all he knew was what he had heard on the street.

## II.

[1] Defendant first assigns as error the admission of testimony by State witness Matthew Henderson that, "When I seen him [Kenneth Phelps] he was, Kenny was trying to fight Percy Batts off of him." Henderson gave this testimony on direct examination in response to the question. "And, where was Kenny Phelps?" Defendant contends that this testimony amounts to a labelling of Percy Batts as the aggressor, a fact which Henderson could not know because, by his own testimony, he arrived on the scene *after* the fight started.

We reject defendant's contention that this testimony amounted to an assertion that Percy Batts, defendant's brother, was the aggressor. The witness was merely describing what he saw when he first observed the fight. While the witness' answer was not strictly responsive to the question, responsiveness is not the ultimate test of admissiblity. If an unresponsive answer contains pertinent facts, it is nonetheless admissible; it is only when the unresponsive answer produces irrelevant, incompetent or otherwise inadmissible information that it should be stricken. *State v. Ferguson*, 280 N.C. 95, 185 S.E. 2d 119 (1971); *State v. Staten*, 271 N.C. 600, 157 S.E. 2d 225 (1967); *In re Will of Tatum*, 233 N.C. 723, 65 S.E. 2d 351 (1951); 3 Wigmore, *Evidence* § 785 (Chadbourn rev. 1970). This assignment of error is overruled.

[2]    Defendant next contends that the trial court erred in sustaining the State's objection to a question asked of defense witness Sheila Ward. Defense counsel asked Ms. Ward, "Was it humanly possible for [the defendant] to have been in a fight that night without your knowing it or seeing it?" We find no error in sustaining the objection to this question. The question was leading because it suggested the desired response, *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974). Defense counsel had previously been cautioned by the trial court not to lead this witness. Whether to allow leading questions is a matter within the sound discretion of the trial court, and its ruling will not be disturbed absent an abuse of discretion. *E.g., State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229; 1 *Stansbury's North Carolina Evidence* § 31 (Brandis rev. 1973 & Supp. 1979). We perceive no abuse of discretion here. This assignment is overruled.

Additionally, we note that the information sought by this question was already before the jury. Ms. Ward, prior to this question, testified that she was with the defendant on the evening of the shooting and that she and defendant left the East Nash Street area where Phelps was stabbed prior to the incident and went to defendant's sister's house. According to Ms. Ward, she and defendant "never left his sister's house that night." We cannot accept defendant's contention that the failure to allow Ms. Ward to answer the contested question did irreparable damage to his alibi defense.

By this same assignment defendant also contends that the trial court erred in sustaining an objection by the State made

*after* defense witnesses Brenda Batts had completed her testimony and had left the witness stand. Mr. Williams, the privately retained prosecutor, said, "Your Honor, we object to this," and the objection was sustained.

We cannot determine from the record the subject matter to which the objection was directed and, thus, are unable to determine whether it was properly sustained. However, the burden is on the party assigning the error to preserve his challenge by making the record complete. *See State v. Hilton*, 271 N.C. 456, 156 S.E. 2d 833 (1967); 4 *Strong's North Carolina Index 3d*, Criminal Law § 158.1 (1976). This assignment is overruled.

[3] By his next assignment defendant contends the trial court erred in giving a limiting instruction to the jury at the end of the testimony by State's rebuttal witness Gwyndolyn Williams. During her testimony on direct, Ms. Williams stated that she had given a written statement about the events on 9 January 1980 to a police detective. The defense attorney was given an opportunity to cross-examine Ms. Williams concerning those statements. At the close of Ms. Williams' testimony, the trial court instructed the jury:

> Any statement this witness may have made as [sic] being received into evidence for the sole purpose of either impeaching the testimony of the witness or corroborating her as a witness as you so find, and is to be considered by you only as relates upon her creditiblity as a witness and for no other purpose.

The substance of this instruction is entirely correct. Ms. Williams' statements were hearsay and were admissible only for the purpose of impeachment or corroboration. We find no error in the giving of the instruction. This assignment is without merit.

Defendant next contends that the trial court erred in denying his motions for nonsuit and his motion to set aside the verdict as against the weight of the evidence because the State failed to prove malice and intent to kill.

When faced with a motion for nonsuit, the trial court must decide whether there is substantial evidence of each element of the crime charged. *E.g., State v. Allred*, 279 N.C. 398, 183 S.E. 2d 553 (1971). "Substantial evidence" is the amount of relevant

evidence that a reasonable mind might accept as adequate to support a conclusion. *State v. Smith,* 300 N.C. 71, 265 S.E. 2d 164 (1980); *State v. Powell,* 299 N.C. 95, 261 S.E. 2d 114 (1980). The evidence must be considered in the light most favorable to the State, and all inconsistencies and contradictions must be disregarded. *State v. Witherspoon,* 293 N.C. 321, 237 S.E. 2d 822 (1977); *State v. Price,* 280 N.C. 154, 184 S.E. 2d 866 (1971).

To support a conviction of second degree murder, the State is required to prove, *inter alia,* that the killing was done with malice. *State v. Jones,* 287 N.C. 84, 214 S.E. 2d 24 (1975). Malice may be proven either by direct evidence or by inference from the circumstances surrounding the killing:

> Malice is not only hatred, ill-will, or spite, as it is ordinarily understood — to be sure that is malice — but it also means that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification. It may be shown by evidence of hatred, ill-will, or dislike, and it is implied in law from the killing with a deadly weapon; and a pistol or a gun is a deadly weapon.

*State v. Benson,* 183 N.C. 795, 799, 111 S.E. 869, 871 (1922); *accord, State v. Moore,* 275 N.C. 198, 166 S.E. 2d 652 (1969); *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889 (1963). A knife may be used in such a way as to make it a deadly weapon. *State v. Randolph,* 228 N.C. 228, 45 S.E. 2d 132 (1947); *State v. McCain,* 6 N.C. App. 558, 170 S.E. 2d 531 (1969). A knife can be found to be a deadly weapon if, under the circumstances of its use, it is an instrument which is likely to produce death or great bodily harm, having regard to the size and condition of the parties and the manner in which the knife is used. 1 *Strong's North Carolina Index 3d,* Assault and Battery § 5.2 (1976).

[4] Viewed in the light most favorable to the State, the evidence of malice at trial was sufficient to withstand defendant's nonsuit motion. The knife used in the stabbing was not introduced into evidence, and there was no testimony as to its size or the length of the blade, but the absence of this evidence is not fatal. The manner in which Phelps was stabbed and the penetration of the knife into the heart and lungs are sufficient evidence of use of a deadly weapon and of malice to withstand a nonsuit motion. We find that the State presented substantial evidence showing every

essential element of second degree murder and that defendant was the perpetrator of the crime. *See State v. Rogers,* 299 N.C. 597, 264 S.E. 2d 89 (1980); *State v. Jones,* 299 N.C. 103, 261 S.E. 2d 1 (1980).

Defendant also contends that the trial court erred in denying his motion, pursuant to G.S. 15A-1414(b)(2) (1978), to set aside the verdict as contrary to the weight of the evidence. This motion is addressed to the discretion of the trial court and its ruling will not be disturbed on appeal absent an abuse of discretion. *State v. Boykin,* 298 N.C. 687, 259 S.E. 2d 883 (1979); *State v. Shepherd,* 288 N.C. 346, 218 S.E. 2d 176 (1975); *State v. Watkins,* 45 N.C. App. 661, 263 S.E. 2d 846, *cert. denied,* 300 N.C. 561, 270 S.E. 2d 115 (1980). We find no abuse here. There was sufficient evidence to warrant submission of the case to the jury and to support its verdict, and the trial court acted well within its discretion in denying the motion to set aside the verdict. This assignment is without merit.

By his last assignment defendant contends that the trial court committed prejudicial error in its instructions to the jury. We have read the entire charge and find that when taken as a whole it fairly and accurately informs the members of the jury of their duties and responsibilities and that it accurately sets forth the essential elements of the crimes charged and the standard of proof required to convict. This assignment is overruled.

After careful review of the record on appeal and the arguments made by the defendant and the State, we conclude that defendant received a fair trial, free from prejudicial error.

No error.