STATE OF NORTH CAROLINA v. KENNY RAY WARREN

No. 7725SC612

(Filed 7 March 1978)

1. **Burglary and Unlawful Breakings § 5.4— possession of recently stolen property—sufficiency of evidence**

Evidence was sufficient for the jury in a prosecution for felonious breaking and entering and felonious larceny where the evidence tended to show that two break-ins occurred, one on 1 September and one on 10 September; stolen goods were found in a van which defendant had in his possession as early as 1 September; a confidential informant told officers shortly after the second break-in that a van full of stolen goods could be found at a named address; officers maintained surveillance of the van from the afternoon of the second break-in until the next day when defendant got in the van and drove it away; officers stopped the van while defendant was driving and found stolen goods; and the jury could find from this evidence that defendant had possession of the stolen goods and exercised control over them so recently after they had been stolen that defendant himself was the thief.

2. **Constitutional Law § 67— confidential informant—disclosure of identity not required**

The trial court did not err in refusing to require disclosure of the identity of a confidential informant, since the prosecution is privileged to withhold the identity of an informant unless the informant was a participant in the crime or unless the informant's identity and testimony are essential to a fair determination of the case or are material to a defendant's defense, and there was no showing in this case of defendant's need for disclosure.

APPEAL by defendant from *Lewis, Judge.* Judgments entered 19 March 1977 in Superior Court, BURKE County. Heard in the Court of Appeals 29 November 1977.

In Case No. 9115 defendant was charged with the felonious breaking and entering into the dwelling of Mary Jo Watson on 1 September 1976 and the felonious larceny therefrom of described articles of personal property. In Case No. 9116 he was charged with the felonious breaking and entering into the dwelling of James P. Hollar on 10 September 1976 and the felonious larceny therefrom of described articles of personal property. The cases were consolidated for trial and defendant pled not guilty to all charges.

The State presented evidence tending to show: At some time between 6:30 a.m. and 1:00 p.m. on 1 September 1976, while Mr. and Mrs. Watson were at work, someone broke into their trailer

home and took a large number of articles of personal property without their permission. At some time between 6:45 a.m. and 4:00 p.m. on 10 September 1976, while Mr. and Mrs. Hollar were at work, someone broke into their home and took a large number of articles of personal property without their permission.

At approximately 5:30 p.m. on 10 September 1976 the police commenced surveillance of a white GMC van parked in the driveway at 407 North Street in Morganton. Wayne Warren, a nephew of defendant, lived at that address. Surveillance over the van was continued until the following afternoon. During their surveillance the officers saw people in the vicinity of the house and van on four or five occasions, but only once did anyone open the van. About 10:00 a.m. on 11 September a white female resembling Wayne Warren's wife was seen to unlock a door on the van and lean in, but she did not enter the van.

At approximately 2:30 p.m. on 11 September, defendant arrived in an autimibile operated by one Paul Berry. Defendant got out of the car driven by Berry, walked to the van, got in the driver's side door without using a key, and drove away in the van, following the Berry automobile. The police followed the van and, after it had been driven approximately three quarters of a mile, stopped and searched it. Defendant was the driver and only occupant of the van. Search of the van revealed that it contained a large number of articles of household equipment and personal property, including articles subsequently identified as having been taken from the Watson and Hollar residences. These included a shotgun, a G.E. Toaster, a Sunbeam Iron, a Sears radio, a carpet shampooer, a Schick hair dryer, a G.E. tape recorder, and a Penney vacuum cleaner, taken from the Watson trailer home, and a 23-inch color television set, a 19-inch black and white television set, a .22 calibre Remington rifle, and a Seth Thomas clock, taken from the Hollar residence.

A voir dire examination was conducted to determine the legality of the police search of the van. During this examination evidence was presented to show that between 2:00 and 3:00 p.m. on 10 September 1976 an SBI agent received a telephone call from a confidential informant, whose information had proven to be reliable in the past, that there was a white van at 407 North Street full of "stolen stuff" that had been taken in recent break-ins. At the conclusion of the voir dire hearing the court entered

an order finding facts from which it concluded that the search was valid, both because consent for the search was given by defendant and because the officers had probable cause to conduct the search even without a search warrant.

During the voir dire examination, defense counsel asked the SBI agent to identify his confidential informant. The court sustained the district attorney's objection and refused to require the State to disclose the name of the confidential informant. On cross-examination of the SBI agent before the jury, defense counsel again asked the witness to identify his confidential informant. The State's objections were again sustained. During this cross-examination the defense counsel brought out before the jury the facts concerning the information given by the confidential informant to the SBI agent, including information that the informant told the SBI agent that he had first observed the van at 407 North Street "late in the morning" of 10 September.

Defendant did not testify but presented evidence to show: Hobert Eugene Warren, defendant's brother and Wayne Warren's father, owned the van and used it in his carpet business. There were at least five sets of keys to the van which were in the possession of various people. Defendant had borrowed the van in early September during the week preceding Labor Day, which was on Monday, 6 September, to go to the races in Darlington. When Wayne Warren left his house on the morning of 10 September, the van was not in his driveway. He returned after 6:00 p.m. to find the van in his driveway with the doors locked. He looked into the van but could not open it because neither he nor his wife had a key. Wayne Warren did not know who parked the van in his driveway, but it was not unusual for his father's employees to leave the van at his house rather than driving the extra ten miles to his father's house. Floyd Keller, a former employee of Hobert Eugene Warren, was one of the persons who had a key to the van, and he called Wayne Warren at eight or nine o'clock on the morning of 11 September to tell him that defendant would move the van later. Paul Berry went to defendant's mobile home on 11 September. Defendant got a phone call, and the two men went to Wayne Warren's house to get the van.

Defendant also presented evidence to establish an alibi. Various witnesses testified that defendant and the van were at

Larry's Lounge in Hickory on 1 September. Witnesses also testified that defendant was sick on 10 September and did not leave his mobile home that day.

The jury found defendant guilty as charged on all counts. From judgments imposing prison sentences, defendant appealed.

*Attorney General Edmisten by Assistant Attorney General Sandra M. King for the State.*

*Patton, Starnes & Thompson, P. A., by Thomas M. Starnes for defendant appellant.*

PARKER, Judge.

Defendant's first assignment of error was directed to the court's overruling of his objection to the evidence obtained by the search of the van. Defendant did not discuss this assignment of error in his brief. Accordingly, it is deemed abandoned. Rule 28(a), North Carolina Rules of Appellate Procedure.

[1] Defendant assigns error to the denial of his motions for directed verdict made on the grounds that there was insufficient evidence to justify submission of the cases to the jury. There was ample evidence to show that the crimes with which defendant was charged were committed by some one. The only question is whether there was sufficient evidence to show that it was the defendant who committed them. We hold that there was.

> "It is the general rule in this State that one found in the unexplained possession of recently stolen property is presumed to be the thief. This is a factual presumption and is strong or weak depending on circumstances—the time between the theft and the possession, the type of property involved, and its legitimate availability in the community." *State v. Raynes*, 272 N.C. 488, 158 S.E. 2d 351; *State v. Allison*, 265 N.C. 512, 144 S.E. 2d 578; Strong, N.C. Index, 2d, Larceny, § 5. To give rise to this presumption, it is not necessary that the stolen property be found actually in the hands of or on the person of the accused, it being sufficient if it was found in a container or place of deposit under his exclusive personal control.

*State v. Lewis*, 281 N.C. 564, 567, 189 S.E. 2d 216, 219 (1972). In addition, where, as in the present case, there is sufficient evidence that a building has been broken into and entered and

that property has been stolen therefrom by such breaking and entering, then a presumption of fact arises that one found in the unexplained possession of the stolen property soon after the breaking and entering is guilty both of the larceny and of the breaking and entering. *State v. Allison*, 265 N.C. 512, 144 S.E. 2d 578 (1965); *State v. Blackmon*, 6 N.C. App. 66, 169 S.E. 2d 472 (1969). Giving the State the benefit of these factual inferences and viewing the evidence in the light most favorable to the State, we find the evidence in the present case sufficient to carry the cases to the jury.

There was uncontradicted evidence that the Watson and the Hollar homes were broken into, one on 1 September and the other on 10 September 1976, and that a large and varied assortment of furnishings and other articles were stolen after each such breaking and entering. There was uncontradicted evidence that a large number of these articles were assembled in a cache in a white van. As to the goods stolen from the Hollar residence, there was evidence from which the jury could find that this occurred at some time between 6:45 a.m. on 10 September 1976, when Mr. and Mrs. Hollar left their residence to go to work, and "late in the morning" of the same day, which was when the informant stated to the SBI agent that he first saw the van with its cache of stolen goods. (Defense counsel placed this latter information before the jury by his cross-examination of the State's witness, SBI Agent Suttle, the officer to whom the confidential informant gave his report; no motion to strike was made, and the jury was entitled to consider the evidence concerning the confidential informant's statements to Agent Suttle for whatever probative value it might have. Similarly, the court could properly consider this evidence in ruling on the defense motions for directed verdict.) There was evidence that the police maintained a continuous watch over the cache of stolen goods from 5:30 p.m. on the day the Hollar residence was broken into until 2:00 p.m. the next day, when defendant came to the cache, entered the van, and took possession of the van and its contents. He was the first person observed by the police to do so.

Thus, the evidence was sufficient to support a jury finding that defendant had possession of the stolen goods and exercised control over them recently after they had been stolen. Such a finding would in itself support inferences of fact, which the jury might draw, that defendant was the thief and that he had participated in the breakings and enterings by which the goods had

State v. Warren

been obtained. Evidence that the stolen goods cached in the van were not in defendant's actual possession for a portion of the time after the last breaking and entering would not destroy the inferences which the jury might legitimately draw from defendant's subsequent possession of the recently stolen goods.

In contending that the inferences should not be permitted in the present case, defendant's counsel calls attention to the following statement in *State v. Patterson*, 78 N.C. 470, 472-73 (1878);

The possession of stolen property recently after the theft, and under circumstances excluding the intervening agency of others, affords presumptive evidence that the person in possession is himself the thief, and the evidence is stronger or weaker, as the possession is nearer to or more distant from the time of the commission of the offense.

He stresses the portion of the quoted statement referring to "circumstances excluding the intervening agency of others," and he calls attention to similar statements in later cases. Relying on this formulation of the so-called "doctrine of recent possession," he contends that the circumstances of the present case do not exclude the intervening agency of others and for that reason the inferences should not be permitted in this case. We point out, however, that in no case in which the doctrine is invoked will the evidence completely and positively exclude the possibility of "the intervening agency of others." Evidence to that effect would make it unnecessary to invoke the doctrine. By its very nature, the doctrine is useful only when the defendant's guilt cannot be established by direct evidence of his presence at the scene of the crime and of his participation therein. Thus, where the doctrine is invoked, there must always be a slight gap in the State's evidence failing to completely account for the possession of the stolen goods at every moment between the actual commission of the crime and the discovery of the goods in a defendant's possession, thereby making it impossible to completely exclude the possibility of some intervening agency.

We think the more accurate formulation of the doctrine is that contained in *State v. Jackson*, 274 N.C. 594, 597, 164 S.E. 2d 369, 370 (1968):

Evidence or inference of guilt arising from the unexplained possession of recently stolen property is strong, or weak, or fades out entirely, on the basis of the time interval between the theft and the possession. . . . The possession, in point of

time, should be so close to the theft *as to render it unlikely that the possessor could have acquired the property honestly.* (Emphasis added.)

Other evidence in the present case lends support to the inferences arising from defendant's possession of the recently stolen property. There was evidence that the van had been in defendant's possession as early as 1 September 1976, the date of the break-in of the Watson residence, and that he may have continued to maintain control over it to 10 September 1976, the date of the break-in of the Hollar residence. Admittedly, this evidence does not exclude the possibility of the intervening agency of others, but it tends to negate that possibility and it supports the inference that defendant was the thief. Whether the evidence showed defendant guilty beyond a reasonable doubt was for the jury to determine; all that the court was called upon to determine was whether it was sufficient to take the cases to the jury. *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431 (1956). We agree with the trial court that it was.

[2] Defendant assigns error to the court's rulings sustaining the district attorney's objections to questions directed by defense counsel during cross-examination of the SBI agent regarding the identity of the confidential informant. The prosecution is privileged to withhold the identity of an informant unless the informant was a participant in the crime or unless the informant's identity and testimony are essential to a fair determination of the case or are material to a defendant's defense. *State v. Ketchie,* 286 N.C. 387, 211 S.E. 2d 207 (1975); *State v. Brown,* 29 N.C. App. 409, 224 S.E. 2d 193 (1976); *State v. Parks,* 28 N.C. App. 20, 220 S.E. 2d. 382 (1975). In the present case the court conducted a voir dire examination of the SBI agent concerning his confidential informant. During this examination the agent testified that he did not have any information that his informant participated in or witnessed either of the break-ins involved in this case nor did the agent have any reason to suspect that he did. The agent also testified that he had no reason to suspect that his informant had driven the van. On this record there is no showing of defendant's need for disclosure of the informant's identity, and we find no error in the Court's refusal to require the disclosure.

The only other assignment of error brought forward in defendant's brief relates to the Court's instructions to the jury de-

fining and applying the "doctrine of recent possession." We have carefully examined the charge and find that the court correctly and adequately applied the law arising on the evidence in this case. In defendant's trial and in the judgments entered we find

No error.

Judges BRITT and VAUGHN concur.