STATE OF NORTH CAROLINA v. FRANKLIN E. MUSSELWHITE AND GREGORY B. ARTIS

No. 7712SC1013

(Filed 6 June 1978)

1. Searches and Seizures § 11— warrantless search of vehicle—probable cause

Police officers had probable cause to conduct a warrantless search of a van in which defendants were riding, and items seized during the search were admissible in defendants' trial for armed robbery, where a grain company had been robbed; the robber had been described as five feet eight inches tall, weighing 170 to 180 pounds, and wearing black boots; a man fitting that description was seen leaving the crime scene wearing a faded blue sweat shirt, faded blue jeans, and black boots; he entered on the passenger's side a yellow van with a spare tire on the back bearing a license number beginning with AY9 and ending with either 86 or 66; a short while before the robbery, one defendant was seen driving the van; the police later spotted a yellow van with spare tire on the back bearing license number AY9 666; the van was occupied by defendants, one of whom was stocky, weighed 185 to 190 pounds, and was wearing a faded blue sweat shirt, faded blue jeans, and black boots.

2. Robbery § 5.6— aider and abettor—driver of getaway car—instructions—insufficient evidence—possession of recently stolen items

The trial court erred in instructing that defendant could be found guilty of aiding and abetting the actual perpetrator of an armed robbery if defendant drove the getaway car where there was no evidence before the jury that defendant was near the scene of the crime, that a getaway car was used, or that the getaway car was driven by defendant, the defendant's possession of items recently stolen in the robbery being insufficient to support such instruction.

APPEAL by defendants from *Godwin, Judge.* Judgment entered 18 May 1977 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 5 April 1978.

Defendants Franklin E. Musselwhite and Gregory B. Artis were charged by bills of indictment with robbery with a firearm. The bills of indictment allege that, with the use of a pistol, the defendants did rob Southern Gin and Grain Company and did steal monies and various distinctive items of property. Both defendants moved to suppress evidence seized by the police during the search of a certain 1974 Dodge van. The trial court held a hearing on the motions to suppress.

The essential facts elicited at the voir dire hearing on the motion to suppress are as follows: Around 9:00 a.m. on 10

September 1976, a white male with a stocking over his face and using a pistol, entered and robbed Southern Gin and Grain. The robber was described as approximately five feet eight inches tall, weighing 170 to 180 pounds, appearing to be 30 to 35 years old. The robber took two cigar boxes containing, among other things, a pistol, $1130 in normal currency, a silver Mother's Day medallion, and a coin collection, including some unusual two dollar bills. After the robber left, one of the three occupants of the office called the police.

Officers responded to the call and interviewed the three witnesses who revealed the foregoing facts. After attending to another matter, the officers began, about two hours later, to question persons in the area. Three women employed by a factory adjacent to Southern Gin and Grain told the police that they had seen a white male leaving the office of Southern Gin and Grain. The man was wearing a bluish sweat shirt, faded blue jeans, and black boots. He was carrying something under his shirt. He entered, on the passenger side, a yellow van with a spare tire on the rear door.

Shortly after interviewing these witnesses, a confidential informant, known by the officers and known to be reliable, whose information had previously led to arrests, told them that he had seen a person running from the office of Southern Gin and Grain around 9:00 that morning. The man was described as a white male, 30 years old, stocky, weighing 170 to 180 pounds with blondish looking hair. He was wearing a bluish white looking faded sweat shirt, faded blue jeans, and black boots. The man entered a yellow van with the spare tire on the back. The license number of the van began with A-Y-9 and ended with either an 8-6 or a 6-6. The informant had also seen this same van driving around the area shortly before the robbery. At that time, it was being operated by one Frank Musselwhite, whom the informant knew. The informant also gave them an accurate description of Musselwhite's residence.

The officers went to Musselwhite's residence and found it as described. At the mobile home, they observed a yellow van with a spare tire on the back bearing license number AY9 666. They returned to the station to check the license and obtain a warrant.

The van was registered to a Richard Nabinger. They returned to the mobile home with the warrant, but the van was gone.

Two other officers stopped the van pursuant to a radio alert for a yellow van license number AY9 666. The van was occupied by two white males — Musselwhite and Artis. Musselwhite was driving. Artis was wearing a faded blue sweat shirt, well worn blue jeans, and black boots. He appeared to be 20 to 25 years old and 185 to 190 pounds.

The two men were detained while the officers awaited assistance. The officers noticed a bulge in Artis's pocket which Artis said was money. It was removed, and it contained several old two dollar bills. One of the officers looked in the door of the van and observed a bag of green vegetable material. Artis and Musselwhite were then arrested and taken to the police station. The van was also taken to the station.

At the station, a thorough search of Artis revealed a silver Mother's Day medallion like the one taken in the robbery. A search of the van revealed numerous items, including several new items of clothing purchased that day and two loaded pistols. One of these pistols was like the gun which had been stolen. The other pistol was like the one used in the robbery.

The trial court denied both defendants' motions to suppress. Subsequent to the denial of his motion to suppress, defendant Artis entered a plea of guilty. Defendant Musselwhite was tried before a jury. The evidence before the jury revealed the following essential facts. A white male about five feet eight inches tall weighing 170 to 180 pounds robbed Southern Gin and Grain around 9:00 in the morning 10 September 1976. He used a pistol. He stole, among other things, $1130 in currency, a silver Mother's Day medallion, a pistol, and a coin collection including some distinctive two dollar bills. Around 4:30 that afternoon, pursuant to a radio alert, police stopped a yellow van belonging to Richard Nabinger. Defendant Musselwhite was driving. Artis was on the passenger's side and was wearing a faded blue sweat shirt, faded blue jeans, and black boots. Nabinger lent his van to Musselwhite around 7:00 that morning and saw him with it around 1:00 that afternoon.

Artis had $319 in his pocket. This money included 15 old type two dollar bills and 24 new two dollar bills—the exact number of each type which had been stolen. Artis also had a medallion like the one stolen. A search of the van revealed numerous new items of clothing purchased that same day, a pistol like the one used in the robbery, and the pistol which had been stolen.

The jury found defendant Musselwhite guilty of armed robbery. The trial court sentenced both defendants to 40 years imprisonment. Defendant Artis appeals from the denial of his motion to suppress. Defendant Musselwhite appeals from the judgment entered on the verdict.

Other facts necessary to the decision in this case are set out in the body of the opinion.

*Attorney General Edmisten, by Assistant Attorney General Isaac T. Avery III and Associate Attorney David Roy Blackwell, for the State.*

*Smith, Geimer & Glusman, by W. S. Geimer, for the defendant appellant Musselwhite.*

*Public Defender James R. Parish for the defendant appellant Artis.*

MORRIS, Judge.

[1] We shall first discuss the issue common to both defendants. Both Musselwhite and Artis moved to suppress the evidence seized by the police during the search of a certain 1974 Dodge van. The search was ostensibly conducted pursuant to a search warrant. The trial court ruled the search warrant invalid. At trial, subsequent to a hearing on the pretrial motions, the court ruled that the evidence seized during the search of the van was admissible even though, after invalidating the warrant, the search was warrantless. Defendants contend that these searches were constitutionally unreasonable and that evidence seized during the search must, therefore, be excluded.

Evidence obtained by unreasonable search is inadmissible under both the Constitution of the United States and the Constitution of North Carolina. *State v. Simmons*, 278 N.C. 468, 180 S.E. 2d 97 (1971). A search may be constitutionally reasonable

even though warrantless. The existence of probable cause plus some exigency such as danger to the arresting officer or the likelihood that the evidence will be destroyed or removed will justify a warrantless search. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419 (1970).

> "Automobiles and other conveyances may be searched without a warrant under circumstances that would not justify the search of a house, and a police officer in the exercise of his duties may search an automobile or other conveyance without a search warrant when the existing facts and circumstances are sufficient to support a reasonable belief that the automobile or other conveyance carried contraband materials." (Citations omitted.) *State v. Simmons*, 278 N.C. at 471, 180 S.E. 2d at 99.

Over 50 years ago, the Supreme Court thoroughly analyzed the problems faced when applying the Fourth Amendment to cases involving automobiles. In *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), a case which involved trafficking in illegal liquor, the Court held that:

> "[t]he measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported." 267 U.S. at 155 and 156, 45 S.Ct. at 286, 69 L.Ed. at 552.

The Court then, as now, realized that evidence concealed in an automobile could be easily moved and that the Court should take that fact into account in determining "reasonableness" under the Fourth Amendment.

The question we face, therefore, is whether the officers had probable cause to search the van. If so, the search was reasonable, and the evidence is admissible. The Court found probable cause to search a car under similar circumstances in *Chambers v. Maroney*. In that case, two men, one wearing a green sweater, the other a trench coat, robbed a service station. Two teenagers saw a light blue compact station wagon circling the block; then they saw it speed away carrying four men one of whom was wearing a green sweater. A description of the car and

the robbers was broadcast on the radio. About an hour later, the police stopped a light blue compact station wagon with four men inside. One of the occupants was wearing a green sweater, and a trench coat was in the car. The Court held that "[o]n the facts before us, the blue station wagon could have been searched on the spot when it was stopped since there was probable cause to search and it was a fleeting target for a search." 399 U.S. at 52, 90 S.Ct. at 1981, 26 L.Ed. 2d at 419.

In the case before us, the robber had been described as five feet eight inches tall weighing 170 to 180 pounds and wearing black boots. A man fitting that description was seen leaving the crime scene wearing a faded blue sweat shirt, faded blue jeans, and black boots. He entered, on the passenger's side, a yellow van with the spare tire on the back door bearing license number AY9 66 or 86. A short while before the robbery, defendant Musselwhite was seen driving the van. The police later spotted a yellow van with the spare tire on the back bearing license number AY9 666. It was occupied by two white males one of whom was stocky, weighed approximately 185 to 190 pounds, and was wearing a faded blue sweat shirt, faded blue jeans, and black boots. Defendant Musselwhite was operating the van. We believe that, in light of *Chambers v. Maroney*, there was probable cause to search the van when stopped. Thus, even if the warrant is invalid, the search is nonetheless reasonable and the evidence is admissible.

[2] The balance of this opinion will deal with issues raised only in the appeal of defendant Musselwhite. Defendant Musselwhite contends that the trial court committed reversible error in instructing the jury that it could find Musselwhite guilty of aiding and abetting Artis in the commission of the robbery. We agree.

It is settled law that "a trial judge should not give instructions to the jury which are not supported by the evidence produced at trial." *State v. Cameron*, 284 N.C. 165, 171, 200 S.E. 2d 186, 191 (1973).

In the present case, the trial court instructed the jury:

". . . if you find from the evidence and beyond a reasonable doubt that on September 10, 1976 Gregory B. Artis committed the crime of armed robbery at Southern Gin and Grain

Company on C Street in Fayetteville, that is, that Artis took property in the presence of James M. Gillis, that Artis carried that property away, that Mr. Gillis did not voluntarily consent to the taking and carrying away of the property;

That at the time of the taking Artis intended to deprive Gillis of the property permanently; that Gillis—I mean that Artis knew that he was not entitled to take the property, that Artis had a firearm, to wit, a pistol, in his possession at the time he obtained the property, and that he, Artis, obtained the property by endangering and threatening the lives of Mr. Gillis, Mr. Cates and Mr. Bennett with the firearm, to wit: a pistol, and further that the Defendant, Franklin Musselwhite, even though not physically present in the office of Southern Gin and Grain Company at the time of the robbery shared the criminal purpose of Gregory Artis and to the knowledge of Artis was the driver of the getaway car, and that in being such driver was in the immediate area of the robbery in a vehicle for the purpose of transporting Artis from the scene of the robbery and that in that respect the Defendant, Musselwhite, was aiding Artis at the time of the robbery it will be your duty to return a verdict of guilty of armed robbery as charged. . . ."

This Court has held that one may be convicted of aiding and abetting in the offense of robbery either if " 'he is near enough to render assistance if need be and to encourage the actual perpetration of the felony' " or if he provides " 'a means by which the actual perpetrator may get away from the scene upon completion of the offense. . . .' " (Emphasis deleted.) *State v. Lyles*, 19 N.C. App. 632, 635 and 636, 199 S.E. 2d 699, 701 and 702 (1973), *cert. denied* 284 N.C. 426, 200 S.E. 2d 662 (1973).

In the present case, the record before us is devoid of any evidence *before the jury* which even suggests that Musselwhite was near the scene of the crime, that a getaway car was used, or that the getaway car was driven by Musselwhite. Thus, it appears that there was no evidence to support the charge.

The State argues that the presumption of theft arising from the possession of recently stolen goods is applicable in this case and sufficiently supports the charge of aiding and abetting. "The presumption, however, is one of fact only and is to be considered

by the jury merely as an evidential fact along with other evidence in determining defendant's guilt." *State v. Weinstein*, 224 N.C. 645, 650 and 651, 31 S.E. 2d 920, 924 (1944); *see also State v. Warren*, 35 N.C. App. 468, 241 S.E. 2d 854 (1978), *cert. allowed* 295 N.C. 94, 244 S.E. 2d 262 (1978). "The applicability of the doctrine of the inference of guilty derived from the recent possession of stolen goods depends upon the circumstance and character of the possession." 224 N.C. at 650, 31 S.E. 2d at 924. The strength of the presumption depends completely upon the "circumstances of the case." *State v. Williams*, 219 N.C. 365, 13 S.E. 2d 617 (1941). In the usual case, the presumption is used against one accused of being the actual perpetrator. In such a case, the presumption has a basis in fact once the theft is shown, since someone must have committed the theft. In this case, however, the presumption is not being so used. Here, the State's evidence unequivocally establishes that the man who robbed Southern Gin and Grain was not the defendant Musselwhite. The State urges us to apply the presumption in order to establish that the defendant drove the getaway car. Even assuming that a robbery was committed, there is absolutely no evidence that a getaway car was used. We do not believe that, absent any other evidence, the possession of recently stolen property should create the presumption (1) that a getaway car was used *and* (2) that the possessor drove the car. Such a presumption clearly would have no basis in fact. We agree with the Court's statement in *State v. Cannon*, 218 N.C. 466, 11 S.E. 2d 301 (1940), wherein the Court stated:

> "The record is barren of any evidence of larceny on the part of Howard Cannon [the defendant], unless the possession by him of the goods . . . is evidence of such guilt. While it is very generally held that the recent possession of stolen property . . . raises a presumption of fact. . . of such guilt, still it would seem that on the present record no such presumption should prevail because the State's evidence shows the larceny to have been committed by others, and fails to connect the defendant in any way with the felonious taking. . . ." 218 N.C. at 467, 11 S.E. 2d at 302.

As a presumption of fact, the presumption of theft arising from the possession of recently stolen goods is applicable in cases similar to this case. However, when the State's evidence clearly shows that the actual taking was not performed by the defendant,

absent some other evidence either to suggest that more than one person was involved or to connect the defendant with the crime, the presumption is so weak that it alone is insufficient to support a charge of aiding and abetting the robbery. If, in the new trial, the State can show either that a getaway car driven by another person was used, that another person joined in the theft, or that defendant was present, then the presumption plus that other evidence would support the charge.

The evidence seized during the search of the van is admissible against both defendants. In the appeal of defendant Artis, we, therefore, find no error. In the trial of the defendant Musselwhite, we find error in the trial court's charge to the jury. The defendant Musselwhite is, therefore, entitled to a new trial.

In the appeal of Artis—no error.

In the appeal of Musselwhite—new trial.

Judges MARTIN and ARNOLD concur.